ESTATE OF IRVING M. MOLEVER, DECEASED, AND JOY G. MOLEVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Molever v. Commissioner
Docket No 24484-90
United States Tax Court
T.C. Memo 1992-737; 1992 Tax Ct. Memo LEXIS 780; 64 T.C.M. (CCH) 1662; December 30, 1992, Filed *780 Decision will be entered for Respondent. For Petitioner: Jeffrey P. Molever. For Respondent: Susan E. Seabrook. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioner Joy G. Molever's Federal income tax for tax year 1987 in the amount of $ 6,697, an addition to tax under section 6651(a)(1) in the amount of $ 335, and additions to tax under section 6653(a)(1)(A) and (B) in the amounts of $ 335 and 50 percent of the interest on the portion of the deficiency attributable to negligence. [1]
Some of the facts have been stipulated and are so found. The stipulation of facts and *781 attached exhibits are incorporated by this reference. Petitioner resided in Phoenix, Arizona, when she filed her petition. After concessions by petitioner, [2] the issues for decision are: (1) Whether petitioner is entitled to innocent spouse treatment under section 6013(e); (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file a timely return; and (3) whether petitioner is liable for additions to tax under section 6653(a)(1)(A) and (B) for negligence or intentional disregard of rules or regulations. Joy G. Molever (petitioner) and Irving M. Molever (Mr. Molever) were married for 41 years. Mr. Molever was a Certified Public Accountant who had a public accounting firm in Pittsburgh, Pennsylvania, where he and petitioner were married. In approximately *782 1967, petitioner and Mr. Molever moved to Arizona, where Mr. Molever owned a shop and engaged in other business activities. In 1987, Mr. Molever had been retired for a number of years. Petitioner is a high school graduate who has worked for approximately 20 years as an interior decorator and furniture salesperson. In 1974, Mr. Molever won a $ 5 million judgment in an action for defamation. In 1976, the verdict was reversed on appeal. At that point, Mr. Molever became obsessed with vindicating himself in court and devoted his time to pursuing various lawsuits, devoting 7 days a week, sometimes up to 20 hours a day, to this effort. Mr. Molever worked out of his home or went to law libraries to do research, primarily representing himself, but also consulting lawyers and incurring expenses for filing, printing, etc. The expenses of these suits were enormous; Mr. Molever declared bankruptcy in 1977, and he and petitioner lost their house. Mr. Molever repeatedly borrowed money to finance his litigation. In 1988, he demanded that petitioner obtain money from her mother, not for the first time, and brandished a gun when she refused. He sued petitioner's mother, obtaining money for *783 the suit from petitioner herself by deception. At this point, petitioner filed for, but never obtained, a divorce. Petitioner was the sole support of the family in 1987. On the Federal income tax return for 1987, the $ 40,996.61 shown as the only income was solely earned by petitioner. [3] She maintained a separate bank account from which she paid the household expenses. She then gave Mr. Molever whatever money was left over, at his insistence, for his litigation expenses. Mr. Molever always prepared joint Federal income tax returns for himself and petitioner, and petitioner relied on him, as an accountant, to do it properly. If she questioned anything he did, he thundered at her and accused her of ignorance. He assured her that he was in frequent consultation with two certified public accountants in Phoenix. In fact, Mr. Molever was deducting the expenses of his litigation as business expenses, *784 assuring petitioner that he had "loss carryforwards". Among these expenses he deducted 40 percent of the Molevers' living expenses (rent, electricity, water, and telephone). Mr. Molever insisted that petitioner file a Form W-4 for 1987 on which she claimed 10 dependency exemptions. For 1988, petitioner filed a Form W-4 claiming 2 exemptions. Mr. Molever became enraged when he learned of this, and insisted petitioner again claim 10 exemptions for 1989. When correspondence or calls from the IRS arrived, petitioner directed them to Mr. Molever and relied on him to handle all tax matters. Petitioner did look at the 1987 joint Federal income tax return which she filed with Mr. Molever, but it is signed only by Mr. Molever. Petitioner's signature also fails to appear on the return for the 1988 year. Petitioner's signature does appear on the 1985 return, as well as on Form 2688, Application for Additional Extension of Time to File for 1987, though petitioner claims Mr. Molever signed for her. Petitioner and Mr. Molever were granted an extension of time to file until October 15, 1988. Their 1987 return was stamped received by the IRS Center in Ogden, Utah, on October 19, 1988. *785 In early 1988, Mr. Molever was very ill with cancer and emphysema. After the episode in which he threatened petitioner with a gun, Mr. Molever's doctor advised petitioner that shortage of oxygen to his brain could explain his irrational episodes. Eventually, he required oxygen full-time. On April 10, 1991, Mr. Molever died. Innocent Spouse Relief
Ordinarily, when a joint return is made, liability with respect to the tax computed on the aggregate income of the husband and wife is joint and several. Sec. 6013(d)(3). However, section 6013(e) provides a measure of relief if certain conditions are met. Section 6013(e) relieves an innocent spouse from liability for tax, including interest, penalties, and other additions for the taxable year, if all of the following conditions are met: (1) A joint return has been made; (2) there is a substantial understatement of tax attributable to the grossly erroneous items of one spouse on such return; (3) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such a substantial understatement; and (4) taking into account all the facts and circumstances, it is inequitable *786 to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. Sec. 6013(e)(1)(A) through (D). The term "grossly erroneous items" with respect to any spouse means: (1) Any item of gross income attributable to that spouse which is omitted from gross income; and (2) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law. Sec. 6013(e)(2). Substantial understatement of tax means any understatement which exceeds $ 500. Sec. 6013(e)(3). The understatement must also exceed a certain percentage of the innocent spouse's income. Sec. 6013(e)(4). The parties have stipulated that the requirement of section 6013(e)(4) has been met in this case. The spouse claiming entitlement to innocent spouse relief has the burden of proving that each statutory requirement of section 6013(e) is satisfied; a failure to prove any one of the statutory elements will prevent such spouse from qualifying for relief. Rule 142(a); Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. 126, 138 (1990); *787 Flynn v. Commissioner, 93 T.C. 355, 359 (1989). The parties have stipulated that the disallowed deductions on the 1987 return were grossly erroneous items of Mr. Molever which are without basis in fact or law. Petitioner does not dispute the amount of the deficiency, but contends that she is entitled to innocent spouse relief. The initial requirement is that the parties filed a joint return. Sec. 6013(e)(1)(A). Whether a joint return has been filed is a factual question, the resolution of which depends upon the intent of the parties. Heim v. Commissioner, 251 F.2d 44, 46 (8th Cir. 1958); Parsons v. Commissioner, 43 T.C. 378, 392-393 (1964); Bour v. Commissioner, 23 T.C. 237, 239 (1954). It has long been held that where an income tax return is intended by both spouses as a joint return, the absence of the signature of one spouse does not prevent their intention from being realized. Consent to a joint return is often inferred where, as in this case, a married couple has followed a pattern of making joint returns, with the nonsigning spouse relying on the *788 other to prepare and file them. Estate of Campbell v. Commissioner, 56 T.C. 1, 12-13 (1971); O'Connor v. Commissioner, 412 F.2d 304, 309 (2d Cir. 1969). Petitioner gave tacit consent to Mr. Molever's practice of signing returns for her, cursorily reviewed the returns prepared by Mr. Molever, and clearly intended to file a joint return for 1987 with her husband. Therefore, the joint return requirement is satisfied. The second requirement is that there is a substantial understatement of tax attributable to the grossly erroneous items of one spouse on such return. Sec. 6013(e)(1)(B). The parties have stipulated to the substantial understatement and to the existence of grossly erroneous items of Mr. Molever. The third requirement is that in signing the return the innocent spouse did not know, and had no reason to know, that there was such a substantial understatement. Two types of cases may arise under section 6013(e): those involving omitted income items and those involving erroneous deductions. The United States Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie, has held that in a *789 case involving omitted income, knowledge of the transaction is virtually equivalent to knowledge of the understatement. This is not necessarily true in the case of an erroneous deduction. In this case, a spouse has "reason to know" of a substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement. Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), revg. an Oral Opinion of this Court dated December 16, 1987. In such a situation, there is a duty of inquiry, which, if not satisfied, may result in constructive knowledge of the understatement being imputed to the spouse. The understatement in this case is due primarily to erroneous deductions. The application of the duty of inquiry standard to this case is not free from doubt. But since we base our holding upon our conclusion that petitioner fails to satisfy the criterion of section 6013(e)(1)(D), we do not reach this issue. The fourth requirement which petitioner must satisfy is she must show that, taking into account all the facts and circumstances, it is inequitable *790 to hold her liable for the deficiency in tax. Here the family income was earned almost solely by one spouse and the grossly erroneous deductions were solely attributable to the other spouse. [4] We conclude that section 6013(e) was never intended to apply to such a set of facts. We have held that a taxpayer cannot be an innocent spouse with respect to that taxpayer's own income. McReynolds v. Commissioner, T.C. Memo. 1991-210; *791 Hayes v. Commissioner, T.C. Memo. 1989-327; Cerny v. Commissioner, T.C. Memo. 1987-599. See Beam v. Commissioner, T.C. Memo. 1990-304 (holding no innocent spouse relief: understatement not attributable solely to husband, when part of income was that of wife), affd. 956 F.2d 1166 (9th Cir. 1992); Krivitsky v. Commissioner, T.C. Memo. 1987-460 (holding no innocent spouse: part of unreported income that of wife). We apply this principle to deny innocent spouse relief in a case where the income is that of the person claiming innocent spouse relief and the grossly erroneous deductions are solely those of the other spouse. The innocent spouse provisions were adopted to deal with the injustice which may arise from the rule of joint and several liability in cases where a joint income tax return is filed. According to the legislative history of this provision, a "typical situation" to which the provisions were directed was one where a husband embezzles funds and omits the proceeds from gross income. The innocent spouse might even have been *792 deserted by her husband, who spent and squandered the embezzled funds himself. S. Rept. 91-1537 (1970), 1971-1 C.B. 608, 609. The purpose was to relieve an innocent spouse from paying tax on income attributable to the other from which the innocent spouse received no benefit. Initially, the innocent spouse provisions applied only to omitted income, but subsequently they were amended to include a provision for cases where the understatement arises from grossly erroneous deductions, credits, or basis. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424, 98 Stat. 494, 801. The legislative history of this provision similarly implies that it was intended to apply to a situation in which one spouse is solely responsible for the understatement: Relief may be desirable, for example, where one spouse claims phony business deduction in order to avoid paying tax and the other spouse has no reason to know that the deductions are phony and may be unaware that there are untaxed profits from the business which the other spouse has squandered. [Supplemental Report of Committee on Ways and Means, H. Rept. 98-432 pt. 2, 1502 (1984).]
In the case before *793 us, virtually all of the income was that of petitioner, who contributed to the underpayment of the income tax due by filing a Form W-4 on which she claimed 10 dependency exemptions. This resulted in no income tax being withheld against her salary. Quite simply, we find no inequity in holding that petitioner should pay income tax on her own income. In view of the purpose of the innocent spouse provision, we reject the idea that it is inequitable for one spouse to be taxed on her own income because the other spouse took erroneous deductions. We consequently hold that petitioner fails to satisfy the requirement of section 6013(e)(1)(D). [5]
*794 Addition to Tax for Delinquent Filing
The second issue for decision is whether petitioner is liable for the addition to tax for late filing under section 6651(a)(1). Petitioner is liable for this addition to tax unless she shows that the failure to timely file the 1987 joint Federal income tax return by the October 15, 1988, deadline was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241 (1985). We read Boyle as imposing a personal and nondelegable duty to determine and meet the statutory filing deadline. In Belk v. Commissioner, 93 T.C. 434, 447 (1989), we held that the fact that a husband assumes the duty to file a tax return and fails to do so does not of itself provide the wife with reasonable cause for delinquent filing, at least where the wife has not taken steps to assure that her husband has performed this duty. Petitioner and Mr. Molever were granted an extension of time in which to file their 1987 return until October 15, 1988. Their return was stamped received on October 19, 1988. Petitioner introduced no evidence of the mailing of *795 the return in order to obtain the benefit of timely mailing as timely filing, as provided in section 7502(a). Accordingly, respondent's determination on this issue is upheld. Addition to Tax for Negligence
Respondent determined that petitioner is liable for the additions to tax under section 6653(a)(1)(A) and (B) for negligence or intentional disregard of rules or regulations. Negligence under section 6653 means lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has the burden of proving that respondent's determination of the additions to tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). We find under the circumstances of this case that petitioner was negligent. Delinquent filing of a return, involving disregard of a known legal duty, constitutes negligence where, as in this case, the taxpayer fails to establish reasonable justification for failing to timely file. Emmons v. Commissioner, 92 T.C. 342 (1989), affd. 898 F.2d 50 (5th Cir. 1990); *796 Burglass v. Commissioner, T.C. Memo. 1979-246. We uphold respondent's determination as to the additions to tax for negligence. Decision will be entered for respondent. Footnotes
1. By Order dated August 6, 1992, this case was dismissed for lack of prosecution as to petitioner Estate of Irving M. Molever, Deceased.↩
2. Petitioner conceded that $ 285 in unreported interest and dividend income, $ 180 from the sale of stock, and $ 1,962 taxable Social Security benefits of Mr. Molever, were properly includable in gross income for 1987.↩
3. The source of $ 1,500 declared as income on Schedule C but offset by the deductions thereon is not accounted for.↩
4. Mr. Molever's Social Security payment of $ 1,962 -- one of the omitted income items -- was the only income not attributable to petitioner. While our rationale in this case might allow petitioner room to argue that she is an innocent spouse with respect to the tax on this $ 1,962 of income, we reject this argument. Petitioner clearly knew or had reason to know of the existence of this income. The rationale of Price v. Commissioner, 887 F.2d 959↩ (9th Cir. 1989), revg. an Oral Opinion of this Court dated Dec. 16, 1987), does not apply, as it dealt with erroneous deductions, not with omitted income.
5. The provisions of sec. 1.6013-5(b), Income Tax Regs., defining the term "inequitable", provide no support for petitioner's position. At the time this provision was promulgated, sec. 6013(e)↩ applied only to situations where income items were omitted. In dealing with the question of whether the innocent spouse "significantly benefited", this regulation clearly assumes a situation in which the innocent spouse is supported by, and may have been divorced or separated from, the spouse to whom the income is attributed. In the present case, by contrast, petitioner earned the income herself.