Patricia A. PRICE, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 88–7124.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1988.

Decided Oct. 18, 1989.

cial Code. *See National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843, 849 (1st Cir.1969).

Kevin G. Staker, Gregory R. Gose, Staker & Gose, Camarillo, Cal., for petitioner-appellant.

William S. Rose, Asst. U.S. Atty. Gen., Gary R. Allen, Robert S. Pomerance, Barbara I. Hodges, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before REINHARDT and O'SCANNLAIN, Circuit Judges, and COYLE,* District Judge.

---

O'SCANNLAIN, Circuit Judge:

This appeal turns on interpretation of the defense to joint federal income tax liability known as the "innocent spouse" provision of the Internal Revenue Code. The wife-taxpayer asserts that the tax court erred by applying an incorrect standard in determining that she was ineligible for relief under this provision. She claims that she was "innocent" within the meaning of the provision at the time she signed the return, and thus should be shielded from liability as to the tax deficiency arising from a deduction as to which her husband-taxpayer had superior knowledge. We agree and reverse the judgment of the tax court.[1]

## I

Patricia Price ("Patricia") married Charles Price ("Charles") in 1969. During the marriage, which ended in divorce in 1986, Charles handled all of the family's investment decisions and maintained a separate checking account for investments. Patricia and Charles also held a joint account that consisted primarily of Patricia's earnings and was used to pay for household expenses as well as the mortgage on the Prices' home. Patricia had to ask Charles for money when she needed to cover expenses exceeding her earnings and the amount in their joint checking account.

In 1976, Patricia, who had studied as a sociology major at a junior college for two years, became part of the "office staff" at Commuter Transportation Services, a car pooling agency. Within five years, she had become a branch manager with the agency. Around the same time, Charles, who had been a stockbroker when the couple wed, was working as an investment broker, and he began to sell shares in a venture known as Cal–Colombian Mines, Ltd. ("CCM"), a Colombian gold mining operation. Patricia was aware of Charles's involvement in the venture. More specifically, Charles informed her that he had acquired several

---

* The Honorable Robert E. Coyle, United States District Judge for the Eastern District of California, sitting by designation.

1. Because the record before us is sufficiently complete to allow us to resolve the issue as to whether Patricia qualifies as an "innocent spouse," we conclude that a remand to allow the tax court to find further facts is unnecessary.

shares of CCM, that he had flown to Colombia to check on the mine's development, that the mining operation was a viable investment, and that two persons Patricia knew, a pharmacy owner and a local developer, had invested in CCM. Patricia also saw photos that Charles stated were taken on the mining operation site which showed heavy equipment.

Other than the above details, Patricia knew virtually nothing else about CCM. For example, she had not seen a CCM offering circular or any other CCM document, and did not know the purchase price of a CCM share or of the existence or the value of any mineral interest. Nevertheless, she stated that she trusted Charles in financial matters, including the CCM investment, because of what she perceived to be his "excellent" business reputation and experience.

Patricia and Charles filed a joint federal income tax return for 1981 which was prepared by a local CPA firm familiar to Patricia. Patricia's only participation in the execution of the return was to provide Charles with her W–2 form, which indicated that Patricia earned approximately $23,000 during 1981. The return reported this income and also recorded Charles's net income as approximately $80,000. On one of the schedules attached to the return, the Prices claimed a $90,000 deduction for the exploration and development expenses allegedly incurred while mining ore in the CCM mine. The Prices offset this deduction against their income from other sources to lessen their total federal income tax liability for 1981 to $391 in self-employment tax.

On the filing deadline day, Charles presented the completed 1981 joint return to Patricia for her signature. Patricia reviewed the return "cursorily," and noticed the $90,000 deduction taken for the mining expenses, which she testified she "thought

... was a bit much." When she asked Charles about the deduction, she testified that he assured her that "if there had been any problems [the CPA] would ... never have drawn the papers for us and put his name on them." After Charles's assurances, Patricia signed the return.

Several years later, the Commissioner issued a joint notice of deficiency to Patricia and Charles, asserting an original deficiency of $40,120 on their 1981 return and assessing an additional five percent fee under Internal Revenue Code § 6653(a)(1) for the Prices' negligent disregard of tax rules and regulations.[2] The Commissioner bases the deficiency claim on his assertion that the $90,000 deduction for the CCM exploration and development expenses is invalid. In support of this assertion, he alleges that the Prices failed to establish that they had paid or incurred any bona fide mine development expenses, that the alleged CCM mining activity had any economic substance, or that the mining was pursued for profit.

In June 1985, Charles filed a joint petition in the tax court seeking redeterminations of the deficiency and the additions to tax. *See* 26 U.S.C. § 6213 (1982 & Supp.V 1987). Although Charles included Patricia's name on the petition, she did not learn of the notice of deficiency and the petition until sometime later. She eventually obtained her own counsel and filed an amended petition in the tax court asserting that she is not liable for the tax deficiency because she is an "innocent spouse" under the Internal Revenue Code. *See* 26 U.S.C. § 6013(e) (Supp.V 1987).

The "innocent spouse provision" exempts a spouse from joint federal income tax liability[3] if she can establish for the taxable year in question that: (1) she and her spouse filed a joint return, 26 U.S.C. § 6013(e)(1)(A); (2) the return contained a

---

**2.** The Commissioner eventually conceded that Patricia is not liable for any addition to tax under section 6653(a) for negligent disregard of tax rules and regulations; she in turn conceded that the deficiency is correct.

**3.** Ordinarily, when a husband and wife file a joint federal income tax return, they are jointly and severally liable for any tax due. 26 U.S.C. § 6013(d)(3) (1982). Congress first implement-

ed an exception to joint and several liability for certain spouses who file joint returns in the form of an innocent spouse provision in 1971. *See* Act of Jan. 12, 1971, § 1, Pub.L. No. 91–679, 84 Stat. 2063. The original provision provided relief only to those innocent spouses who were otherwise subject to liability because of an understatement due to an omission of taxable income. In 1984, Congress expanded the scope of the provision, bringing within its ambit defi-

"substantial understatement of tax" attributable to errors the other spouse committed, 26 U.S.C. § 6013(e)(1)(B); (3) in signing the return she did not know or have reason to know of the substantial understatement, 26 U.S.C. § 6013(e)(1)(C); and (4) it would be inequitable to hold her liable for the deficiency in question, 26 U.S.C. § 6013(e)(1)(D).[4] The person seeking relief from liability carries the burden of proving each element of section 6013(e)(1). *Shea v. Commissioner,* 780 F.2d 561, 565 (6th Cir. 1986); *Sonnenborn v. Commissioner,* 57 T.C. 373, 381 (1971).

The tax court denied Patricia innocent spouse protection based on its specific rulings that she failed to carry her burden as to the third element of section 6013(e)(1),[5] which requires a spouse to establish that "in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement...." 26 U.S.C. § 6013(e)(1)(C).[6] The court read this subsection as requiring a taxpayer seeking innocent spouse protection to establish that she did not know of the transaction underlying the deduction. Because it found that Patricia knew about the CCM investment, the court rejected her defense and ruled that both she and Charles were liable for the deficiency arising from the CCM deduction.

---

**4.** Section 6013(e), as amended in 1984, reads as follows:

(e) Spouse relieved of liability in certain cases.—

(1) In general.—Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

(2) Grossly erroneous items.—For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse—

(A) any item of gross income attributable to such spouse which is omitted from gross income, and

(B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.

Tax Reform Act of 1984, Pub.L. No. 98–369, § 424(a), 98 Stat. 494, 801–02 (1984) (current version at 26 U.S.C. § 6013(e) (Supp.V 1987)).

This amended version of the innocent spouse provision, although not enacted until 1984, applies to Patricia nonetheless because section 424(c) of the Act provides for retroactive operation of the amendments to all open tax years to

which the Internal Revenue Code of 1954 applies. H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1502, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1144.

**5.** The Commissioner conceded by way of pretrial stipulations that Patricia had satisfied the first and part of the second of these four criteria; *i.e.,* the parties stipulated to the facts that the Prices filed a joint return for 1981, and that the return reflected a substantial understatement of tax that was solely attributable to "a deduction which has no basis in fact or law, as defined by I.R.C. § 6013(e)(2)(B)." The court then found that the invalid deduction was "attributable to Charles Price," thereby completing satisfaction of the second "innocent spouse" criterion, a finding not challenged on appeal. Thus, the third criterion is the focus of our inquiry.

Because the tax court found that Patricia failed to satisfy section 6013(e)(1)(C), it declined to resolve whether Patricia had satisfied the section's fourth criterion relating to the inequity of holding her liable under the totality of circumstances. 26 U.S.C. § 6013(e)(1)(D).

**6.** "Substantial understatement" is defined within subsection (e) as "any understatement (as defined in section 6661(b)(2)(A)) which exceeds $500." 26 U.S.C. § 6013(e)(3). "Understatement" in turn is defined as "(i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return" reduced by any rebate not applicable here.

The invalid mining expense deduction easily fits within this definition. First, the invalid $90,000 deduction led to the Prices recording an amount on their 1981 joint return that was below what they legally owed. Second, the amount by which the deduction caused the Prices' assessment of tax liability to be deficient by $40,120, which far exceeds the $500 threshold of section 6013(e)(3).

---

ciencies arising from invalid deductions or credits. *See* Tax Reform Act of 1984, Pub.L. No. 98–369, § 424, 98 Stat. 494, 801–803 (1984).

In accordance with this ruling, the court entered a final judgment upholding both the Commissioner's assessment of income tax deficiency and his determination that the Prices should be subjected to an additional interest penalty on the deficiency under 26 U.S.C. § 6621(c) (Supp. V 1987).[7] Patricia appeals,[8] alleging that the tax court erroneously interpreted section 6013(e)(1)(C) in ruling that she does not qualify as an innocent spouse under the Code.

## II

■ In construing a statute, we look first to its plain meaning. *United States v.*

*594,464 Pounds of Salmon,* 871 F.2d 824, 825–26 (9th Cir.1989). Section 6013(e)(1)(C) states that to qualify for the shield of innocent spouse protection, a spouse must establish that "in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement...." 26 U.S.C. § 6013(e)(1)(C). The plain meaning of the section is clear. It requires a spouse seeking relief to establish that she did not know and did not have reason to know that the deduction would give rise to a substantial understatement.[9] *See Stevens v. Commissioner,* 872 F.2d 1499, 1505 (11th Cir.1989).

If the statutory language is unambiguous, its plain meaning controls unless

---

**7.** Section 6621(c) of the Code provides that an additional interest penalty is to be assessed if a taxpayer's underpayment is attributable to a tax-motivated transaction. Under the penalty, the interest rate is 120 percent of the normal underpayment rate.

**8.** The court granted the Commissioner's motion to dismiss Charles's case for want of proper prosecution after he failed to appear at trial. Charles did not appeal from the tax court's decision dismissing his petition.

**9.** This differs from the interpretation the tax court gave section 6013(e)(1)(C), but as even it conceded, its interpretation does not comport with a fair reading of the plain meaning of the statute. *See Sanders v. United States,* 509 F.2d 162, 169 n. 14 (5th Cir.1975) (noting that a virtually identical legal standard "is difficult to square with a literal reading of the statutory language" of section 6013(e)). The tax court, borrowing language from cases involving deficiencies caused by omissions of income, read section 6013(e)(1)(C) to require a spouse to establish that she did not know of *the transaction* underlying the deduction. *See, e.g., Quinn v. Commissioner,* 524 F.2d 617, 626 (7th Cir.1975); *Mayworm v. Commissioner,* 54 T.C.M. (CCH) 941, 944 (1987); *McCoy v. Commissioner,* 57 T.C. 732 (1972).

We decline to follow the tax court's literal superimposition of the legal standard developed in omission cases onto deduction cases in part because to do so would for the most part wipe out innocent spouse protection in the latter category. Such a standard may be workable in omission cases simply because the understatement is caused by includable income being left off a return. Therefore, it is considerably easier for a spouse to show that she was unaware of the transaction giving rise to the omission, and thus to qualify for relief. *See* Borison, Innocent Spouse Relief: A Call for Legislative & Judicial Liberalization, 40 Tax Law. 819, 836–37 (1988).

But because deductions are necessarily recorded, any spouse who at least reads the joint return will be put on notice that *some* transaction allegedly has occurred to give rise to the deduction. As a result, if knowledge of the transaction, operating of itself, were to bar relief, a spouse would be extremely hard-pressed ever to be able to satisfy the lack of actual and constructive knowledge element of section 6013(e)(1) in a deduction case.

Thus, adoption of such an interpretation would do violence to the intent Congress clearly expressed when it expanded coverage of the provision to include relief for spouses from deficiencies caused by deductions for which there is no basis in fact or law. Tax Reform Act of 1984, Pub.L. No. 98–369, § 424(a), 98 Stat. 494, 801–02 (1984); H.R.Rep. No. 98–432, Pt. 2, 98th Cong., 2d Sess. 1502, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1143. It would also hinder Congress's broader purpose in enacting section 6013(e)—that of seeking to remedy an injustice—by giving the section an unduly narrow and restrictive reading. *See Allen v. Commissioner,* 514 F.2d 908, 915 (5th Cir.1975); *Estate of Killian,* 53 T.C.M. (CCH) 1438, 1441 (1987).

While we do not embrace the tax court's construction of section 6013(e)(1)(C), we do not mean to say that a spouse's knowledge of the transaction underlying the deduction is irrelevant. Obviously, the more a spouse knows about a transaction, *ceteris paribus,* the more likely it is that she will know or have reason to know that the deduction arising from that transaction may not be valid. We merely conclude that standing by itself, such knowledge does not preclude relief.

In addition, when we look beyond the *language* courts have used in omission cases to the *function* such a standard has served, we see that it represents merely a different way of approaching what is the same inquiry as the one we announce today. *See Purcell v. Commission-*

Congress has "clearly expressed" a contrary legislative intention. *594,464 Pounds of Salmon*, 871 F.2d at 826. Here, far from conflicting with congressional intent, the plain meaning squares with one of the few glimpses the sparse legislative history of the 1984 Amendments provides. In discussing the 1984 Amendments, the House Ways and Means Committee stated that it:

> believes that the present law rules relieving innocent spouses from liability for tax on a joint return are not sufficiently broad to encompass many cases where the innocent spouse deserves relief. Relief may be desirable, for example, where one spouse claims a phony business deduction in order to avoid paying tax and the other spouse has no reason to know *that* the deductions are phony and may be unaware that there are untaxed profits from the business which the other spouse has squandered.

Supplemental Report of Comm. on Ways & Means, H.R.Rep. 98–432 (Pt. 2), on Tax Reform Act of 1984, H.R. 4170, at 1502 (1984), 1984 U.S.Code Cong. & Admin. News 1143 (emphasis supplied).

■ Initially, we note that the tax court correctly found that Patricia did not know the legal consequences of the deduction, which, while not sufficient, is obviously necessary to entitle her to relief. Moreover, the record contains no evidence to suggest that Patricia *knew* upon signing the return that it contained a substantial understatement for any reason. Thus, our focus must turn toward whether Patricia *had reason to know* of the substantial understatement. *Lessinger v. Commissioner*, 85 T.C. 824, 838 (1985), *rev'd on other grounds*, 872 F.2d 519 (2d Cir.1989).

Of itself, ignorance of the attendant legal or tax consequences of an item which gives rise to a deficiency is no defense for one seeking to obtain innocent spouse relief. *McCoy v. Commissioner*, 57 T.C. 732,

734 (1972); *Mayworm v. Commissioner*, 54 T.C.M. (CCH) 941, 944 (1987); *Price v. Commissioner*, 53 T.C.M. (CCH) 1414 (1987); *see also Sanders v. United States*, 509 F.2d 162, 169 (5th Cir.1975). In *Price* for example, the tax court denied "innocent spouse" protection to a joint return taxpayer who admitted she knew about unreported funds her husband had embezzled despite the fact she did not know that embezzled funds constitute taxable income. *Price*, 53 T.C.M. at 1416. Thus, if a spouse knows virtually all of the facts pertaining to the transaction which underlies the substantial understatement, her defense in essence is premised solely on ignorance of law. *Id.* In such a scenario, regardless of whether the spouse possesses knowledge of the tax consequences of the item at issue, she is considered as a matter of law to have reason to know of the substantial understatement and thereby is effectively precluded from establishing to the contrary. *See Stevens*, 872 F.2d at 1505 & n. 8; *Quinn v. Commissioner*, 62 T.C. 223, 231 (1974), *aff'd*, 524 F.2d 617 (7th Cir. 1975); *Mayworm*, 54 T.C.M. at 944 (although spouse did not know legal consequences of transaction, because she "had actual knowledge of the basic structure of the transaction *and* of her ex-husband's receipt of the additional funds she is *not eligible* for relief under section 6013(e)") (emphasis supplied).

Here, while the tax court properly concluded that Patricia knew certain facts about the CCM investment, it cannot be said that Patricia was so intimately involved with the investment such that she knew virtually all of the facts of the transaction underlying the deduction, leaving her no option but to rely solely upon ignorance of law as a defense and therefore leaving us no option but to conclude that she had reason to know of the understatement. *See* Borison, Innocent Spouse Re-

---

er, 826 F.2d 470, 474 (6th Cir.1987). That is, in income omission cases, knowledge of the transaction is virtually equivalent to knowledge of the understatement because if a spouse knows of a transaction which generated income that the return does not report, then it is extremely likely that she will know that the return does

not report all income (unless she merely lacks knowledge of tax consequences). Thus, the omission cases that have examined whether a spouse had knowledge of the transaction in a sense really have been looking to discern whether she knew or had reason to know of the substantial understatement.

lief: A Call for Legislative and Judicial Liberalization, 40 Tax Law. 819, 834 (1987). Because Patricia's ignorance extends beyond the legal consequences of the deduction, we proceed to determine on the facts before us whether Patricia had reason to know that the return contained a substantial understatement.

A spouse has "reason to know" of the substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement. *Stevens*, 872 F.2d at 1505 (citing *Sanders*, 509 F.2d at 167); *Hinds v. Commissioner*, T.C.M. 1988–426; *Estate of Killian*, 53 T.C.M. 1438, 1441 (1987). Factors to consider in analyzing whether the alleged innocent spouse had "reason to know" of the substantial understatement include: (1) the spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. *Stevens*, 872 F.2d at 1505; Borison, 40 Tax Law. at 831–32.[10]

In applying these factors, we note that Patricia had limited involvement in the financial affairs of her marriage with Charles in general and none whatsoever in the CCM investment in particular. *See Mysse v. Commissioner*, 57 T.C. 680 (1972). Indeed, Charles held a separate checking account for his investments, while Patricia's participation in the couple's money matters apparently was limited to paying household expenses and the mortgage on

their home. *See Hinds*, T.C.M. 1988–426.[11] Further, the Commissioner points to no unusually lavish expenditures the couple made during this time period when compared to their past levels of income, standard of living, and spending patterns. Finally, the record indicates Charles took advantage of Patricia's lack of understanding of their financial affairs and misled her. Given these facts, we conclude that a reasonably prudent person in Patricia's position at the time she signed the return could not be expected to know that the return contained a substantial understatement. Thus, Patricia has satisfied her burden to establish that she did not have reason to know that the CCM deduction would give rise to a substantial understatement.

Even if a spouse is not aware of sufficient facts to give her *reason to know* of the substantial understatement, she nevertheless may know enough facts to put her *on notice* that such an understatement exists. *Cf. Stevens*, 872 F.2d at 1505. Such notice is provided if the spouse knows sufficient facts such that a reasonably prudent taxpayer in her position would be led to question the legitimacy of the deduction. *See Mysse*, 57 T.C. at 698–99; *see also Stevens*, 872 F.2d at 1505. In such a scenario, a duty of inquiry arises, which, if not satisfied by the spouse, may result in constructive knowledge of the understatement being imputed to her. *Levin v. Commissioner*, 53 T.C.M. (CCH) 6, 8–9 (1987) (spouse cannot obtain benefits of innocent spouse protection in deduction case "by simply turning a blind eye to—by preferring not to know of—facts fully disclosed on a return, of such a large nature as would reasonably put such spouse on no-

---

**10.** The fact that these comport with factors courts have used in omission cases further bolsters our assertion that the legal standard we announce today is in essence no different functionally than the one used in omission cases. *See, e.g., Sanders*, 509 F.2d at 167–68.

**11.** The similarity between the facts here and the facts of *Hinds* is striking. In *Hinds*, in finding a taxpayer eligible for innocent spouse relief, the tax court found that:

[the culpable spouse] exerted near total control over the couple's financial affairs. The extent of petitioner's participation in their financial affairs was to accept money from him to use to pay household expenses and to purchase the family's food and clothing. She relied on her husband to ensure that their Federal income tax returns were properly completed. She undoubtedly presumed that the returns were proper as they had been prepared by certified public accountants.
*Hinds v. Commissioner*, T.C.M. 1988–426.

tice that further inquiry would need to be made").

We agree with the Commissioner that the size of the deduction ($90,000) viz-a-viz the total income reported on the return (just more than $100,000), when considered in light of the fact that Patricia knew of the existence of the CCM investment and its rather unusual nature (Colombian gold mining), was enough to put Patricia on notice. We disagree with the Commissioner, however, in his insistence that Patricia did not satisfy the resultant duty to inquire.

Patricia did not ignore the deduction, but instead questioned Charles about it. We therefore distinguish this case from one in which the tax court denied relief to a spouse seeking relief who simply ignored a large deduction and who refused to make inquiries. *Levin*, 53 T.C.M. at 8. In addition, Patricia agreed to sign the return only after Charles had assured her that a putatively reputable CPA had prepared it. *See Killian*, 53 T.C.M. at 1441 (spouse "took reasonable steps to determine the accuracy of the return" in agreeing to sign return only after having questioned husband about sham loss claimed on return and having received assurances that loss was due to investment that had been recommended by CPA who prepared return). Thus, especially given her relative lack of experience in and understanding of financial affairs, *see Mysse*, 57 T.C. 680; *Hinds*, T.C.M. 1988–426, we conclude that Patricia satisfied her duty of inquiry.

The tax court stated that it was not necessary for it to make an official finding as to whether Patricia satisfied the fourth criterion of section 6013(e)(1) concerning the inequity of holding her liable for the deficiency under the totality of circumstances. Nevertheless, it "conclude(d) that ... it would be inequitable to hold her liable".[12] The record supports the tax court's conclusion. Accordingly, we hold

that Patricia has also satisfied the fourth element of section 6013(e)(1), thereby entitling her to relief as an innocent spouse.

## III

For the reasons set forth herein, the judgment of the tax court is REVERSED.

---

**12.** The tax court specifically ruled "[s]pecifically, the Court concludes that Petitioner did not benefit from the item in question, and that taking all of the other circumstances into account it would be inequitable to hold her liable." Tax Court Bench Opinion, Docket No. 15475–85, December 16, 1987 at RT 69.