HAROLD L. PARK, DECEASED, AND ALICE P. JONES, FORMERLY ALICE P. PARK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Park v. Commissioner
Docket No. 38378-84
United States Tax Court
T.C. Memo 1993-252; 1993 Tax Ct. Memo LEXIS 255; 65 T.C.M. (CCH) 2894; June 8, 1993, Filed *255 For Alice P. Jones, petitioner: Thomas E. Redding and Paul Coselli. For respondent: Christopher A. Fisher BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined, by statutory notice of deficiency dated August 22, 1984, a deficiency of $ 266,582 in petitioners' 1981 Federal income tax, which has been reduced, by stipulation of the parties, to a deficiency of $ 40,065. The sole issue remaining for decision is whether Alice P. Jones (petitioner) is entitled to relief under section 6013(e)[1] from joint and several liability for that deficiency. For the reasons that follow, we hold that petitioner is not entitled to such relief. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. Petitioners resided in Corpus Christi, Texas, when they filed the petition in this case. Petitioner is a high school graduate who also enrolled in and *256 completed four or five real estate courses at her local community college. Petitioner has not taken any courses in income taxation, and, for the years prior to her 1978 marriage to Harold L. Park, she had always hired a tax return preparer to complete her Federal income tax returns. Prior to petitioners' marriage, petitioner resided in Ridgecrest, California, where she worked as a licensed real estate agent. Mr. Park resided in Houston, Texas, where he was a corporate executive with a background in public accounting. After petitioners married, petitioner moved to Houston, Texas. Petitioner thereupon applied for and obtained a license to sell real estate in Texas. Although petitioner briefly sold real estate in Texas, she was primarily a homemaker from May 1978 until July 1985. Petitioner's household responsibilities included opening the mail, paying the family bills, reconciling the monthly bank statements for the family checking accounts, and storing petitioners' investment and financial records. In 1981, petitioners maintained two checking accounts, one at the Spring Branch Bank and the other at the Town and Country Bank. Although Mr. Park referred to the Town and Country *257 Bank checking account as his business account, the funds from that account sometimes were used for personal expenditures. Petitioner carried and controlled the checkbooks for each account, wrote most of the checks drawn on each account, and reconciled the monthly bank statements for each account. Mr. Park's Investments
Mr. Park did not consult with petitioner about his investments or financial affairs. However, petitioner did read documents that Mr. Park received in the mail with respect to his investments. When petitioner did not understand these documents, she would ask Mr. Park questions about them. Mr. Park was evasive when responding to petitioner's questions, assuring her that "it was none of her business", "he [or their accountant] would take care of it", and "he who made the gold made the rules". In December 1980, Mr. Park, on the advice of his accountant, opened an individual investment account with Financial Securities Corp. (Financial Securities). Mr. Park's investment with Financial Securities called for Financial Securities to purchase and sell, on Mr. Park's behalf, Government National Mortgage Association (GNMA) securities and related forward delivery *258 contracts. Mr. Park's initial investment with Financial Securities was $ 7,500, and he made that investment by writing a check on petitioners' Town and Country Bank account. Financial Securities mailed Mr. Park monthly statements of account. Among the items listed on these statements were the amounts Financial Securities received from Mr. Park, the GNMA forward delivery contracts Financial Securities bought or canceled on Mr. Park's behalf, and Mr. Park's open trade equity. Petitioner saw these statements when she opened the family mail and, on occasion, would question Mr. Park about them. Mr. Park was evasive when responding to petitioner's questions. Mr. Park told petitioner that their accountant had recommended the Financial Securities investment, that it was a tax investment, that it should make money for them, and that he or their accountant would take care of it. Petitioner never found out what GNMA or a forward delivery contract is. By letter dated June 4, 1981, Financial Securities informed Mr. Park that he had a debit balance of $ 13,000 in his margin account and that his failure to pay this amount would result in liquidation of his investment account. Mr. Park was *259 out of town on business when the letter was delivered to petitioners' home. However, petitioner read the letter and telephoned Mr. Park to advise him of its contents. On Mr. Park's instructions, petitioner sent Financial Securities a check for $ 13,000 drawn on the Town and Country Bank account. On or about January 11, 1982, Financial Securities mailed Mr. Park a letter listing the GNMA contracts that it had canceled on his behalf during 1981. Financial Securities reported that, as a result of these cancellations, Mr. Park had sustained a net loss of $ 107,456.44. Petitioners' Lifestyle
In or about 1978, petitioners purchased a house for $ 110,000 in Houston. On July 22, 1983, petitioners sold their home in Houston for $ 175,000. [2] Petitioners moved to Corpus Christi, Texas, where they purchased another house. The $ 19,000 downpayment on the home in Corpus Christi was paid with funds that petitioner received as a result of a personal injury lawsuit. *260 From 1980 to 1982, petitioners vacationed annually in Las Vegas. While in Las Vegas, petitioners would divide their time between playing slot machines and gaming tables and attending shows. On each trip, petitioner spent between $ 500 and $ 1,000 at the slot machines and gaming tables. However, Mr. Park lost considerably more money, at least $ 9,000 per trip, at the slot machines and gaming tables. From 1981 to 1983, petitioners made annual trips to Missouri, around Christmas, to visit Mr. Park's mother. Petitioners also purchased two or three automobiles, including a Lincoln and a Mercedes 450SL, and Mr. Park purchased a mink coat for petitioner. Petitioners' 1981 Federal Income Tax Return
Petitioners reported, on their 1981 Federal income tax return, salary and wages of $ 240,000, a Schedule C loss of $ 38,003, and a Schedule D loss of $ 1,455. Petitioners also reported a supplemental loss of $ 107,456. The Form 4797 attached to petitioners' 1981 income tax return reported that the supplemental loss was attributable to Mr. Park's investment in Financial Securities and that his "Cost or other basis, plus improvements" in Financial Securities was $ 107,456. Petitioners' *261 actual loss with respect to the Financial Securities investment was $ 13,000. Mr. Charles D. Randolph, a certified public accountant and business associate of Mr. Park, prepared petitioners' 1981 Federal income tax return. Petitioner, Mr. Park, and Mr. Randolph signed petitioners' 1981 income tax return on the lines under the jurat that read, in pertinent part: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete." However, petitioner did not review the income tax return before she signed it. Petitioner also did not ask Mr. Park or Mr. Randolph any questions about the correctness of the income tax return or any information contained in it. Petitioners received an income tax refund of $ 36,829 for 1981. Petitioners deposited this refund in the Town and Country Bank checking account, from which it was used to pay Mr. Park's business expenses and some household expenses. On April 29, 1986, petitioner was divorced from Mr. Park. Under the divorce agreement, petitioner received petitioners' home in Corpus Christi; two parcels of real *262 property located in California; a 1981 Mark IV Lincoln Continental; a Norman Rockwell lithograph; all stocks, bonds, and securities registered in petitioner's name; all insurance policies on the life of petitioner; cash and bank accounts in petitioner's control; and petitioner's personal effects. The agreement also provided that Mr. Park was responsible for petitioners' Federal income tax liabilities from the date of their marriage through December 31, 1984. Mr. Park died on August 15, 1991. If petitioners' 1981 income tax deficiency is included as a liability in computing petitioner's net worth immediately after her divorce, her net worth was less than $ 10,000. However, if petitioners' 1981 income tax deficiency is not included as a liability in computing petitioner's net worth immediately after her divorce, her net worth was at least $ 10,000. OPINION When a husband and wife file a joint Federal income tax return, "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." Sec. 6013(d)(3). However, section 6013(e) provides that a spouse may be relieved of this joint and several liability for tax if the spouse can *263 show that: (1) A joint Federal income tax return was filed for the year in issue; (2) there was a substantial understatement of tax on that return attributable to grossly erroneous items of the other spouse; [3] (3) in signing the income tax return, he or she did not know or have reason to know of the substantial understatement; and (4) it is inequitable to hold him or her liable for the deficiency in question. If the substantial understatement of tax is attributable to a claim of deduction, credit, or basis, the spouse also must show that the understatement exceeds a specified percentage of the spouse's adjusted gross income for the most recent year ending before the date the deficiency notice was mailed. Sec. 6013(e)(4); Stevens v. Commissioner, 872 F.2d 1499, 1504 n.5 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). *264 The spouse seeking relief under section 6013(e) has the burden of proving that each requirement of the statute has been satisfied. Rule 142(a), Tax Court Rules of Practice and Procedure; Stevens v. Commissioner, supra at 1504. Failure to satisfy any one of the requirements will prevent the relief-seeking spouse from qualifying for such relief. Stevens v. Commissioner, supra at 1504; Grubich v. Commissioner, T.C. Memo. 1993-194. The parties agree that petitioners filed a joint income tax return for 1981, that there was a substantial understatement of tax on that return attributable to a grossly erroneous item of Mr. Park, and that the substantial understatement exceeds the requisite percentage, under section 6013(e)(4), of petitioner's adjusted gross income for 1983. Remaining in dispute is whether petitioner, in signing the income tax return, knew or had reason to know of the substantial understatement, whether petitioner's net worth immediately after her divorce includes petitioners' 1981 income tax deficiency, and whether it would be inequitable to hold petitioner liable for *265 the deficiency in question. In determining whether a taxpayer had "reason to know" of the substantial understatement, we ask whether the spouse would have reason to know of the transaction that gave rise to the substantial understatement. Bokum v. Commissioner, 94 T.C. 126, 153 (1990) (quoting Purcell v. Commissioner, 826 F.2d at 474), affd. on other grounds    F.2d     (11th Cir. June 4, 1993). [4] While the Courts consistently apply this approach to omission of income cases, the Courts of Appeals for the Ninth, Eighth, and Second Circuits have expressed reservations about our approach in deduction cases. *267 These Courts of Appeals have adopted a more liberal approach to deduction cases that only requires "a spouse seeking relief to establish that she did not know and did not have reason to know that the deduction would give rise to a substantial understatement." Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989), revg. an Oral Opinion of this Court; see also Hayman v. Commissioner,     F.2d    ,     (2d Cir. May 4, 1993), affg. T.C. Memo. 1992-228; *266 Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101. [5] *268 In Bokum, which we decided after the Court of Appeals for the Ninth Circuit decided Price, we declined to adopt the more lenient "reason to know" approach taken by the Court of Appeals for the Ninth Circuit. Nevertheless, petitioner argues that, in light of the holding of the Court of Appeals for the Eighth Circuit in Erdahl and enactment of section 6004 of TAMRA, [6] *269 we should reconsider our position on this issue and adopt the more liberal approach used by the Courts of Appeals for the Ninth, Eighth, and Second Circuits. [7] Because we believe that petitioner had reason to know of the substantial understatement under both the Price and Bokum approaches, we decline her invitation to reconsider our position. Whether the spouse had reason to know of the substantial understatement is a question of fact to be determined after reviewing the entire record. Guth v. Commissioner, 897 F.2d 441 (9th Cir. 1990), affg. T.C. Memo. 1987-522; Lubrano v. Commissioner, T.C. Memo. 1984-14. Courts making that determination have considered the relief-seeking spouse's level of education, his or her involvement in the financial and business affairs of the family, any large unexplained increase in the family's standard of living, and the allegedly culpable spouse's evasiveness and deceit about the family's finances. Erdahl v. Commissioner, supra at 590-591; Price v. Commissioner, supra at 965. *270 Under both the Price and Bokum approaches, the relief-seeking spouse's lack of familiarity with the tax consequences of the item that gave rise to the substantial understatement is not sufficient to entitle him or her to relief under section 6013(e). Price v. Commissioner, supra at 964; McCoy v. Commissioner, 57 T.C. 732, 734 (1972). The relief-seeking spouse has "reason to know" of the substantial understatement if, at the time the tax return was signed, a reasonably prudent taxpayer in his or her position could be expected to know that the stated tax liability was erroneous or that further investigation was warranted. Price v. Commissioner, supra at 965; Bokum v. Commissioner, 94 T.C. at 148; see also Stevens v. Commissioner, 872 F.2d at 1505 (citing Sanders v. United States, 509 F.2d 162, 167 (5th Cir. 1975)). The relief-seeking spouse cannot turn a blind eye and fail to inquire about a deduction or credit claimed on the tax return where the amount of the deduction or credit *271 is so large that it would reasonably put him or her on notice that he or she should inquire further. Hayman v. Commissioner,     F.2d at    ; Price v. Commissioner, supra at 965; Bokum v. Commissioner, supra at 148; Levin v. Commissioner, T.C. Memo. 1987-67. Although Mr. Park did not consult with petitioner on decisions regarding the family finances, petitioner had ready access to all documents that Financial Securities sent Mr. Park regarding his investment. Petitioner admitted that she read these documents and was aware of Mr. Park's investment with Financial Securities. Petitioner also had knowledge of the family's finances and Mr. Park's actual payments to Financial Securities, inasmuch as she paid most of the family bills out of the joint checking accounts, had control of the family checkbooks, wrote and mailed the $ 13,000 check to Financial Securities, and reconciled the monthly checking account statements. Compare Berry v. Commissioner, T.C. Memo. 1990-396 (wife had knowledge of family's financial situation where she paid the *272 taxpayers' day-today expenses and reconciled their joint checking account), affd. 935 F.2d 1280 (3d Cir. 1991) with Price v. Commissioner, 887 F.2d at 965 (wife lacked knowledge of her husband's financial matters, including his investment in the business venture at issue, where she did not have access to her husband's separate checking account). Petitioner therefore was aware of the circumstances that gave rise to the error on their 1981 income tax return. Cf. Hayman v. Commissioner,     F.2d at    . A cursory examination of petitioners' 1981 income tax return and the Form 4797 attached to that return [8] would have alerted petitioner that her husband was reporting a "cost basis" in Financial Securities of $ 107,456, an amount substantially greater than the checks of $ 7,500 and $ 13,000 that Mr. Park and petitioner wrote to Financial Securities. "Tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability." *273 Id. at     (emphasis added). Petitioners' claimed loss from Mr. Park's investment in Financial Securities reduced their 1981 income by nearly 45 percent and resulted in a tax refund of $ 36,829. This substantial reduction in petitioners' 1981 income, when coupled with petitioner's constructive knowledge of the discrepancy between the claimed losses attributable to Mr. Park's investment in Financial Securities and the amount he actually paid Financial Securities, reasonably put petitioner on notice that she should inquire further of her husband or the tax return preparer. Cf. Stevens v. Commissioner, 872 F.2d at 1507. *274 Contrary to petitioner's argument, she is not relieved of her duty of inquiry by her lack of familiarity with the Federal tax laws or her reliance on her husband's familiarity with their finances and the Federal tax laws. In Stevens v. Commissioner, supra at 1507, the Court of Appeals for the Eleventh Circuit held that "a spouse cannot be excused from the imputation of constructive knowledge simply because she was a homemaker and relied on her husband to handle the family's finances." Petitioner, in addition to her responsibilities with respect to the family finances, admitted that Mr. Park was not straightforward on those occasions when she questioned him about his investments, including Financial Securities. Rather than relieving petitioner of her duty to inquire, Mr. Park's evasiveness should have prompted petitioner to review the income tax return and question Mr. Park or the income tax preparer about any possible errors. Id.
We accordingly hold that petitioner had reason to know of the substantial understatement within the meaning of section 6013(e)(1)(C). Because petitioner has failed to prove that she satisfies this requirement of *275 section 6013(e), she is not entitled to relief under that section. We therefore need not decide whether petitioner's net worth immediately after her divorce includes petitioners' 1981 income tax deficiency or whether it would be inequitable to hold petitioner liable for the deficiency in question. To reflect the foregoing and the parties' stipulation of settled issues, An appropriate order and decision will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the year at issue.↩
2. Petitioner testified that the home was sold for around $ 185,000. However, petitioners reported, on the Form 2119 attached to their 1983 income tax return, that the sale price was $ 175,000.↩
3. Before 1984, sec. 6013(e) provided relief to the spouse only if the understatement of tax was due to an omission of income attributable to the other spouse. However, Congress, in the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424, 98 Stat. 494, 801-803, amended sec. 6013(e), expanding the scope of the provision to include deficiencies attributable to any claim of deduction, credit, or basis for which there is no basis in fact or law. Sec. 6013(e); see also Stevens v. Commissioner, 872 F.2d 1499, 1503-1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. The 1984 amendments to sec. 6013(e) are retroactively applicable to all open tax years to which the Internal Revenue Code of 1954 applies. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat 494, 803; Bokum v. Commissioner, 94 T.C. 126, 138 n.13 (1990), affd.    F.2d    ↩ (11th Cir. June 4, 1993).
4. Because it was not "inequitable" to hold Mrs. Bokum liable for the income tax deficiency, the Court of Appeals for the Eleventh Circuit did not reach the issue of whether she "had reason to know" of the substantial understatement. Bokum v. Commissioner,     F.2d    ,     (11th Cir. June 4, 1993), affg. 94 T.C. 126↩ (1990).
5. The Courts of Appeals for the Ninth, Eighth, and Second Circuits have questioned our approach in Bokum v. Commissioner, 94 T.C. 126 (1990), in deduction cases because deductions are items necessarily recorded on the income tax return and a spouse with constructive knowledge of the tax return is therefore put on notice that some transaction allegedly has occurred. Price v. Commissioner, 887 F.2d 959, 963 n.9 (9th Cir. 1989), revg. an Oral Opinion of this Court; see generally Hayman v. Commissioner,     F.2d    ,     (2d Cir. May 4, 1993), affg. T.C. Memo. 1992-228; Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101. These Courts of Appeals therefore go on to suggest that knowledge of the transaction is virtually admitted and that applying our Bokum approach to deduction cases would preclude innocent spouse protection in most deduction cases. Erdahl v. Commissioner, supra at 589; Price v. Commissioner, supra at 963 n.9; see also Borison, "Innocent Spouse Relief: A Call for Legislative and Judicial Liberalization", 40 Tax Law. 819, 836-837↩ (1987).
6. Sec. 6004 of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3685-3686, provides that Subsection (c) of section 424 of the Tax Reform Act of 1984 * * * is amended by adding at the end thereof the following new paragraph: "(3) Transitional Rule. If -- (A) a joint return under section 6013 of the Internal Revenue Code of 1954 was filed before January 1, 1985, (B) on such return there is an understatement (as defined in section 6661(b)(2)(A) of such Code) which is attributable to disallowed deductions attributable to activities of one spouse, (C) the amount of such disallowed deductions exceeds the taxable income shown on such return, (D) without regard to any determination before October 21, 1988, the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such an understatement, and (E) the marriage between such spouses terminated and immediately after such termination the net worth of the other spouse was less than $ 10,000,
notwithstanding any law or rule of law (including res judicata), the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year * * *"↩
7. Petitioner argues that sec. 6004 of TAMRA, specifically the part excluding consideration of any determination made before Oct. 21, 1988, requires us and other Courts to take a liberal approach, at least as lenient as the Price approach, in deciding whether a spouse is entitled to relief under sec. 6013(e)↩.
8. Although petitioner did not review petitioners' 1981 income tax return, her signature under the jurat indicates that the information stated therein was true and correct to the best of her knowledge. Because petitioner cannot abdicate her responsibility to examine the income tax return and attached schedules, her deliberate ignorance of the contents therein does not support her claim that she is entitled to relief under sec. 6013(e). Hayman v. Commissioner,     F.2d     (2d Cir. May 4, 1993), affg. T.C. Memo. 1992-228; Levin v. Commissioner, T.C. Memo. 1987-67↩.