DONALD H. MCCOMB AND KATHLEEN L. MCCOMB, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McComb v. Commissioner
Docket No. 17107-86
United States Tax Court
T.C. Memo 1994-577; 1994 Tax Ct. Memo LEXIS 585; 68 T.C.M. (CCH) 1248; T.C.M. (RIA) 94577; November 23, 1994, Filed *585 Decision will be entered under Rule 155. For petitioners: Declan J. O'Donnell. For respondent: James M. Kamman, Elizabeth Chirich, and Robin F. Kaufer. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' 1982 Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6659
1982
$ 19,260.82
$ 963.04
[1]
$ 5,778.24
All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision whether Kathleen R. McComb [1] (petitioner) is entitled to innocent spouse relief under section 6013(e). *586 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Garden Grove, California, at the time of the filing of their petition in this case. Petitioners timely filed their joint Federal income tax return for the taxable year 1982. The return was prepared by an accountant who had prepared petitioners' returns since about 1980. Petitioner did not go with her husband to consult with the accountant. The first couple of years petitioners had gone together to the accountant to consult with him about preparation of their returns, but thereafter petitioner chose not to go with her husband to see the accountant. Petitioner married Donald H. McComb (Mr. McComb) on February 28, 1976. They were divorced on August 18, 1993. Petitioners had one daughter from this marriage, who currently lives with petitioner. Petitioner received her associate's degree in arts, a 2-year program, from Golden West Junior College, in Huntington Beach, California. Petitioner also attended 2 additional years of college, but received no further degree. During 1981 and 1982, petitioner worked for General Telephone of California (GTE). She *587 has worked for GTE since 1969 holding various positions, including installer and repairer of public telephones, directory assistance operator, customer service representative, business service representative, and assignment clerk. During the marriage, Mr. McComb handled most of the financial matters. Petitioner maintained a separate checking account for household expenses. Prior to the year at issue, petitioners had invested in rental units as a tax-sheltering device. At some point prior to November 23, 1982, Mr. McComb approached petitioner about making another tax-sheltered investment. Petitioner stated to Mr. McComb that she wanted nothing to do with investing of any kind, since petitioners had recently lost their house due to poor investments. The conversation lasted only a few minutes. On November 23, 1982, Mr. McComb signed a subscription agreement with Dillon Oil Technology (the tax shelter), a tax-sheltered investment, and forged petitioner's signature to the subscription agreement. Mr. McComb did not tell petitioner that he had made the investment in the tax shelter, and petitioner and her husband had no further conversation regarding the investment in the tax shelter *588 until after petitioners started receiving literature from the tax shelter and correspondence from attorneys. Petitioner asked her husband about the literature and correspondence, and he told her about making the investment in Dillon Oil Technology and that the Internal Revenue Service (IRS) was questioning the tax shelter deduction taken on their income tax return. In 1982, Mr. McComb advised petitioner to lower the withholding of Federal income tax from her wages, so that she could take home more money each month. Petitioner agreed to do this and did lower the withholding of Federal income tax on her salary. She did not ask her husband why she was justified in lowering the amount of withheld Federal income tax on her salary. Petitioners, on line 18 of their 1982 joint Federal income tax return, reported a loss of $ 49,877 from "Rents, royalties, partnerships, estates, trusts, etc.", which they explained on Schedule E, Supplemental Income Schedule, as a loss from "Dillon Oil Tech" partnership, thus reducing their reported $ 81,081 income from other sources to $ 31,204. Petitioner signed the joint return, but did not examine it. Mr. McComb simply turned to the page of the return *589 designated for signatures, and petitioner signed her name in the designated space without reading any part of the return. Mr. McComb did not force petitioner to sign the return, nor did he prevent petitioner from reviewing the return at any time. The first time that petitioner examined Schedule E of the return, explaining the claimed tax shelter loss, was at the time of trial of this case. In either 1982 or early 1983, petitioners purchased a home (the home) for approximately $ 114,000. They obtained financing from petitioner's parents and through a second mortgage provided by the seller. Under the terms of the marital separation agreement, petitioner received the home, and approximately one-half of the other community assets. Petitioner, at the time of the trial of this case, had approximately $ 30,000 of equity in the home. Mr. McComb is currently paying child support to petitioner with whom their 15-year-old daughter lives. The marital settlement agreement provides that Mr. McComb is to pay the taxes that emanate out of this case. On March 14, 1986, respondent mailed a notice of deficiency to petitioners in which she determined that the deduction taken from the investment *590 in the tax shelter was disallowed. Petitioners have conceded that they were not entitled to the claimed loss deduction from the tax shelter, and have also conceded the increased interest under section 6621(c). Respondent has conceded the additions to tax under sections 6653(a)(1) and (2) and 6659. The parties have stipulated that petitioners' deduction for the loss from the investment in the tax shelter was grossly erroneous as defined in section 6013(e)(2) and resulted in a substantial understatement of tax. Petitioner contends that she is entitled to innocent spouse relief under section 6013(e). OPINION When a husband and wife file a joint Federal income tax return for a year, "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." Sec. 6013(d)(3). Under section 6013(e), [2] if certain requirements are met for a year, a spouse may be relieved of all or a portion of the joint liability for that year. *591 In order to qualify for innocent spouse relief for 1982, petitioner must show that: (1) She filed a joint Federal income tax return with her husband for that year; (2) on the joint tax return there is a substantial understatement of tax; (3) the substantial understatement of tax is attributable to a grossly erroneous item; (4) the grossly erroneous item is an item of her husband; (5) in signing the joint tax return, petitioner did not know, and had no reason to know, of the substantial understatement; and (6) it is inequitable to hold petitioner liable for the deficiency in tax attributable to such substantial understatement. Petitioner's failure to prove any one of the statutory requirements will prevent her from qualifying for innocent spouse relief. Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. Respondent concedes that the first four elements above listed have been satisfied in this case, but contends that petitioner knew, or certainly had reason to know, of the substantial understatement and that it is not inequitable to hold petitioner liable for the deficiency. In the instant *592 case, petitioner had discussed with her husband whether they should invest in a tax shelter, but after this discussion never asked him whether he had made such an investment until she and her husband received literature and correspondence with respect to the investment. When she inquired about the investment, her husband told her about it and that it was being questioned by the IRS. In 1982, Mr. McComb suggested to her that she lower the amount of the withholding for Federal income tax on her salary. She did not ask why she should do this, or how the taxes would be paid if she did so. However, she reduced the amount of the withholding for taxes. It is clear from the record that Mr. McComb's suggestion that petitioner reduce the amount of Federal income tax withheld from her salary was made after his discussions with petitioner about investing in a tax shelter. Petitioner's conversations with her husband about investing in a tax shelter and lowering the withholding for Federal income taxes on her salary strongly suggest that petitioner knew, or at least suspected, that her husband had invested in the tax shelter. Petitioner relies heavily on Price v. Commissioner, 887 F.2d 959, 964-965 (9th Cir. 1989), *593 revg. an Oral Opinion of this Court. In that case, the Court of Appeals for the Ninth Circuit held that when the substantial understatement of tax results from a disallowed deduction, a spouse has reason to know of the substantial understatement if a reasonably prudent taxpayer in the spouse's position at the time the return was signed could be expected to know that the return contained the substantial understatement. Guth v. Commissioner, 897 F.2d 441, 443-444 (9th Cir. 1990), affg. T.C. Memo. 1987-522; Price v. Commissioner, supra at 965. In Price v. Commissioner, supra, the Court of Appeals for the Ninth Circuit reversed our holding that if the spouse claiming the benefits of section 6013(e) knew of the facts about the item deducted which gave rise to the substantial understatement, it was not necessary that such spouse know that as a matter of law claiming such a deduction would result in a substantial understatement. Since an appeal in the instant case would be to the Court of Appeals for the Ninth Circuit, we are bound by the holding of that court. *594 Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971); see Bokum v. Commissioner, 94 T.C. 126 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). However, in the instant case, it is clear from the record that petitioner did have reason to know of the substantial understatement. Numerous courts, including the Court of Appeals for the Ninth Circuit, have stated that the factors to be considered in determining whether a taxpayer had reason to know of a substantial understatement are: (1) The taxpayer's level of education; (2) taxpayer's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Guth v. Commissioner, supra at 444; *595 Stevens v. Commissioner, supra at 1505. The issue is factual and is to be determined from the record as a whole. Guth v. Commissioner, supra at 443-444. Petitioner received an associate's degree in arts from a junior college, and attended 2 more years of college without receiving a degree. While Mr. McComb handled most of the financial matters for the couple, the record shows that he discussed these matters with petitioner and certainly does not show that he concealed the couple's financial affairs from petitioner. Petitioner testified that initially she and her husband had jointly discussed the preparation of their Federal income tax returns with their accountant, but later she "chose not to go" with her husband to see the accountant with respect to preparation of their Federal income tax returns. The record also shows that petitioner was very much aware of the level of the family income and must have known that some special reason would have to exist for her to be justified in reducing the Federal income tax withholding from her salary. However, she did not ask why she should reduce her level of withholding. *596 Also, while the record shows that Mr. McComb did not tell her specifically about the tax shelter investment, he did not conceal the facts about their business transactions from petitioner when she asked about them. From the facts here present, it is clear that at a minimum petitioner knew enough facts to put her on notice that a substantial understatement of tax might exist. See Guth v. Commissioner, supra at 444-445; Price v. Commissioner, supra at 965; Stevens v. Commissioner, supra at 1505. A duty of inquiry is established if the spouse knows facts that would cause a reasonably prudent taxpayer in her position to question the legitimacy of a deduction. Price v. Commissioner, supra; Stevens v. Commissioner, supra.This duty of inquiry may result in knowledge of the substantial understatement being imputed to the spouse claiming lack of knowledge. Price v. Commissioner, supra.Income tax returns claiming large deductions such as tax shelter losses which substantially *597 reduce the couple's tax liability by offsetting income from other sources should put a taxpayer on notice that there may be a substantial understatement of tax. Hayman v. Commissioner, supra at 1262 (applying the standards set forth in Price v. Commissioner, supra). A spouse may not obtain protection as an innocent spouse in deduction cases by turning a blind eye to facts fully disclosed on a return which, if she had looked at the return, would reasonably have put her on notice that further inquiry was needed. Price v. Commissioner, supra at 965. As pointed out in Park v. Commissioner, 25 F.3d 1289, 1299 (5th Cir. 1994), affg. T.C. Memo. 1993-252, a person by signing a return takes responsibility for it which cannot be escaped by simply ignoring its content. A spouse cannot obtain innocent spouse relief by preferring not to know of a deduction fully disclosed on the return. Park v. Commissioner, supra at 1299; Price v. Commissioner, supra at 966. *598 Petitioner had a duty to review her completed 1982 income tax return, and she is not relieved of that obligation simply because of her reliance on Mr. McComb or their accountant to complete the return properly. Hayman v. Commissioner, supra; see also United States v. Boyle, 469 U.S. 241, 251-252 (1985). Petitioner is deemed to have constructive knowledge of the contents of her 1982 return, even though she did not review the completed return. Park v. Commissioner, supra at 1299; Hayman v. Commissioner, supra at 1262. By not examining the return petitioner ignored facts that would have given her reason to know of the unreported income. Had she made even a cursory examination of the 1982 joint income tax return, she would have seen the tax shelter deduction which reduced petitioners' gross income from $ 81,081 to $ 31,204, a decrease of over 60 percent. This was clearly stated on the first page of the return. It was clear from the record that had petitioner known about the tax shelter and the corresponding deduction, she would have at the very *599 least made further inquiries. Petitioners' previous attempt at a tax-sheltered investment, the loss of their former home, and the conversation between petitioner and Mr. McComb concerning another possible tax shelter investment put petitioner on notice that the deduction might result in a substantial understatement of tax. Petitioner undertook responsibility for the return when she signed it which she cannot escape by merely ignoring its contents. Park v. Commissioner, supra at 1299. A reasonably prudent person in petitioner's position would have certainly questioned the legitimacy of the deduction giving rise to the substantial understatement if she had looked at the return. Since petitioner had a duty of inquiry, she was required at least to question her husband about the deduction. Price v. Commissioner, 887 F.2d at 966. Since petitioner made no such inquiry, we hold that petitioner failed in her duty of inquiry. Since, because of this failure, petitioner had reason to know of the substantial understatement, she does not qualify for innocent spouse relief under section 6013(e). Because of our holding as *600 to petitioner's "reason to know" of the substantial understatement, we need not decide whether it would be inequitable to hold petitioner liable for the deficiency attributable to the substantial understatement of tax. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 19,260.82.↩
1. On brief, petitioner correctly states that her middle initial is "R". However, no motion to correct caption was filed.↩
2. SEC. 6013(e)(1) In general. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,↩
then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.