T.C. Memo. 2004-230

UNITED STATES TAX COURT

WENDLYN H. ALBIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17605-02.                    Filed October 12, 2004.

Wendlyn H. Albin, pro se.[1]

<u>Steven M. Roth</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court under section 6015(e) for relief from joint and several Federal income tax

---

[1] <u>Sidney J. Machtinger</u> represented petitioner from the time of the petition, Nov. 12, 2002, until his withdrawal on Feb. 4, 2004.

liabilities for 1983, 1984, 1985, and 1986.[2]  Respondent determined that petitioner was not entitled to any relief under section 6015, and we decide whether to sustain that determination.  We hold we shall.

FINDINGS OF FACT

Some facts were stipulated and are so found.  The stipulations of fact and the accompanying exhibits are incorporated herein by this reference.  Petitioner resided in San Marino, California, when her petition to this Court was filed.

Petitioner is a college educated woman who as a licensed realtor earned $18,000 in real estate commissions in 2002.  At the time of trial, she and her husband, John E. Albin (Albin), were living on Social Security, rental income, and income that she earned working 14 hours per week at a retail outlet.  She and Albin (collectively, the Albins) have been happily married and living together at all relevant times, and during that time he was neither evasive nor deceitful to her as to their finances.

The Albins filed joint 1983, 1984, 1985, and 1986 Forms 1040, U.S. Individual Income Tax Return, that were prepared by Albin's accountant in consultation with Albin.  Petitioner was not involved in the preparation of these returns.  Albin, outside the accountant's presence, presented each of these returns to

---

[2] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

petitioner for her signature, and she signed all of the returns without reading or examining any part of them.  She also did not ask Albin, or receive from him, any question as to any item or amount that appeared on the returns.

In or about December 1982, Albin invested in a tax shelter (shelter) that was in the form of a limited partnership named York Leasing Associates.  The understatements in issue stem from tax deficiencies resulting from that shelter and, more specifically, the Albins' reporting of losses for the subject years of $340,244, $249,398, $129,232, and $58,995, respectively, that the shelter passed through to Albin in his capacity as one of its partners.  Exclusive of these losses, the Albins reported on their 1983 through 1986 tax returns total income (primarily from the salary Albin received from a company he owned) of $322,727, $225,496, $282,557, and $338,243, respectively.  With those losses, the Albins reported that they had relatively little or no Federal income tax liability and that they were entitled to refunds of almost all of the Federal income taxes withheld from Albin's salary.[3]  Albin spent the taxes that the Albins would

---

[3] The Albins reported on their 1984 return that they had no tax liability and $17,062 of tax withheld from Albin's salary. The Albins reported on their 1985 return that they had a $12,656 tax liability and $25,425 of tax withheld from Albin's salary. The Albins reported on their 1986 return that they had an $891 tax liability and $14,716 of tax withheld from Albin's salary. The stipulated copy of the Albins' 1983 return does not contain the page on which they reported their tax liability and withheld

(continued...)

have paid, but for the claimed losses, on items of benefit to both of the Albins. Each loss that the Albins reported from the shelter was later substantially reduced by respondent upon audit, resulting in a large tax deficiency in each subject year.

On or about December 13, 2000, petitioner filed with respondent a Form 8857, Request for Innocent Spouse Relief (request). This request was reviewed by Robert Cipriotti (Cipriotti), an officer in respondent's Office of Appeals (Appeals), after the request was denied by respondent's "compliance" division. Cipriotti applied the principles of Rev. Proc. 2000-15, 2000—1 C.B. 447, to the request and recommended in his report dated August 13, 2000, that the request be denied. On August 21, 2002, Appeals issued to petitioner a notice of determination stating that petitioner's request was denied because, respondent determined, petitioner was not eligible for relief under any of the provisions of section 6015.

On January 10, 2003, the Albins sold for $925,000 a house that they had purchased in 1968 for $53,500. Respondent received $564,194.67 of the sale proceeds pursuant to a tax lien that respondent had filed as to petitioner's income tax liabilities for the subject years. Afterwards, as of December 31, 2003,

---

³(...continued)
tax. The portions of the 1983 return which are in evidence indicate that the Albins reported no tax liability for 1983.

petitioners continued to owe $804,407.53 of taxes for the subject years.

The Albins currently have approximately $825,000 of equity in a home that they own in Dana Point, California (Dana Point).[4] They use that home personally and do not rent it to others. The Albins also currently own three pieces of rental real estate in Whittier, California, which they purchased in June 1979, March 1979, and December 1985, respectively, for $85,000, $62,500, and $115,000, respectively.[5] In 2003, the Albins' equity in the rental properties totaled approximately $350,000. The Albins currently lease all three of these rental properties and, in 2002, they received $49,200 of gross rent and reported net rental income of $19,618.[6]

The Albins also currently own a second home, their primary residence, which they bought in 1987 for $410,000, with a cash downpayment of $200,000. This second home collateralizes a home equity loan that the Albins received in 1995 and used to finance

---

[4] Petitioner admits in her brief that the Albins purchased this home in Dana Point in 1986.

[5] Petitioner admits in her brief that the Albins purchased the last of those three rental properties by making a $20,000 cash downpayment.

[6] The Albins also realized $13,848 of income in 1992 from their interests in two partnerships and one S corporation. One of these two partnerships was registered with the Commissioner as a tax shelter.

Albin's purchase of a company that manufactures and distributes "turbos".

OPINION

Spouses filing a joint Federal income tax return are generally jointly and severally liable for the tax shown on the return or found to be owing.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).  In certain cases, however, an individual filing a joint return may avoid joint and several liability for tax (including interest, penalties, and other amounts) by qualifying for relief under section 6015.  The three types of relief prescribed in that section are:  (1) Full or apportioned relief under section 6015(b) (full/apportioned relief), (2) proportionate relief under section 6015(c) (proportionate relief), and (3) equitable relief under section 6015(f) (equitable relief).  Petitioner claims entitlement to one or all of these types of relief.  Except as otherwise provided in section 6015, petitioner bears the burden of proving that claim. See Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); see also Rule 142(a)(1).

1.  Full/Apportioned Relief

Section 6015(b) provides relief from joint and several liability to the extent that the liability is attributable to an understatement of tax.  In order to be eligible for this relief,

a requesting spouse needs to satisfy the following five elements

of section 6015(b)(1):

> (A) a joint return has been made for a taxable
> year;
>
> (B) on such return there is an understatement of
> tax attributable to erroneous items of 1 individual
> filing the joint return;
>
> (C) the other individual filing the joint return
> establishes that in signing the return he or she did
> not know, and had no reason to know, that there was
> such understatement;
>
> (D) taking into account all the facts and
> circumstances, it is inequitable to hold the other
> individual liable for the deficiency in tax for such
> taxable year attributable to such understatement; and
>
> (E) the other individual [timely] elects (in such
> form as the Secretary may prescribe) the benefits of
> this subsection * * *.

The requesting spouse's failure to meet any one of these

requirements prevents him or her from qualifying for

full/apportioned relief.  Alt v. Commissioner, supra at 313.

Respondent focuses on subparagraphs (C) and (D) of section

6015(b)(1) and argues that petitioner meets neither of these

requirements.  We consider only the first of these two

subparagraphs in that we agree with respondent that it has not

been met.  As to that first subparagraph, subparagraph (C), the

Court of Appeals for the Ninth Circuit, the court to which an

appeal of this case lies, has held that a spouse such as

petitioner has "reason to know" of an understatement if a

reasonably prudent taxpayer in her position when she signed the

return could have been expected to know that the return contained the understatement.[7]  Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989).[8]  Whether such a taxpayer has reason to know of an understatement is a subjective test that rests on factors such as the taxpayer's level of education, the taxpayer's involvement in the family's business and financial affairs, the evasiveness or deceit of the taxpayer's spouse as to the couple's finances, and the presence of any unusual or lavish expenditures inconsistent with the couple's past levels of income, standard of living, and spending patterns.  Id.  The court in Price also stated that this "reason to know" requirement may impose on the requesting spouse a "duty of inquiry" that would put that spouse on notice that an understatement exists.  Id.  The test for whether this duty of inquiry requirement applies is the same subjective test that is used to determine whether the requesting spouse had reason to know of the understatement; i.e., in an erroneous deduction setting, whether a reasonably prudent taxpayer in the position of the requesting spouse would be led to

---

[7] Respondent makes no claim that petitioner actually knew about the understatement or the shelter and deductions related thereto.

[8] Although the knowledge requirement in Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), was that of former sec. 6013(e)(1)(E), we have held that interpretations of the former provision are instructive to our interpretation of the knowledge requirement of sec. 6015(b)(1)(C).  Butler v. Commissioner, 114 T.C. 276, 283 (2000).

question the legitimacy of the deduction, or his or her tax liability in general. Id. at 965-966; see also Guth v. Commissioner, 797 F.2d 441, 445 (9th Cir. 1990), affg. T.C. Memo. 1987-522. If the requesting spouse is aware of sufficient facts to put that spouse on notice as to the possibility of an understatement, the duty of inquiry arises, which, if not satisfied, may cause that spouse to be treated as having constructive knowledge of the understatement. Price v. Commissioner, supra at 965; see also Guth v. Commissioner, supra at 445.

We believe that petitioner had reason to know of the understatement in each subject year. While in each of those years the Albins reported a large amount of income (but for the shelter loss), a large loss (i.e., from the shelter), and relatively little or no tax liability, petitioner was unconcerned about her tax obligation and took no steps to assure herself that the subject returns were filed properly. She did not read the returns or even ask to see any of the records related thereto. A reasonably prudent person in the position of petitioner, a college educated individual, would have at least looked at the face and signature page of each return (i.e., the front and back of Form 1040), eyed the clearly reported items of income, loss (from the shelter) and minimal or no tax liability, and inquired as to the loss (from the shelter), the minimal or no tax

liability, and the amount of the claimed refund before signing the return. Such is especially true given the extraordinarily large amount of income (but for the shelter loss) realized by the Albins in each subject year and the fact that Albin was neither evasive nor deceitful with petitioner as to their finances.[9] See Reser v. Commissioner, 112 F.3d 1258, 1267-1268 (5th Cir. 1997) ("Tax returns setting forth 'dramatic deductions' will generally put a reasonable taxpayer on notice that further investigation is warranted. A spouse who has a duty to inquire but fails to do so may be charged with constructive knowledge of the substantial understatement and thus precluded from obtaining innocent spouse relief." (Fn. ref. omitted.)), affg. in part and revg. in part T.C. Memo. 1995-572; Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993) ("Tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability."), affg. T.C. Memo. 1992-228; Levin v. Commissioner, T.C. Memo. 1987-67 (spouse requesting relief from joint and several liability had a duty to inquire

---

[9] We believe that the reasonable taxpayer in the position of petitioner also would have been mindful that the Albins were able to own and maintain various pieces of real estate during the subject years and were able to accumulate a significant amount of cash to use in 1987 as a downpayment on their now primary residence.

about large deductions reported on the face of her joint return and was unable to escape her tax responsibilities by ignoring the contents of the return when signing it); see also Mora v. Commissioner, 117 T.C. 279, 289 (2001); cf. Price v. Commissioner, supra at 965-966 (spouse entitled to relief under former section 6013(e) where she questioned her husband about the erroneous deduction and he took advantage of her lack of understanding of their financial affairs and misled her as to the contents of the return by assuring her that the deduction was proper). Petitioner could easily have discussed the contents of the subject returns with Albin at or before the time that she signed them. He did not coerce her into signing them, nor did he exercise undue influence over her with respect to their financial affairs. See Adams v. Commissioner, 60 T.C. 300, 303 (1973). As the Court stated in a similar setting in Levin v. Commissioner, supra:

> a spouse cannot obtain the benefits of section 6013(e) [the predecessor to section 6015] by simply turning a blind eye to--by preferring not to know of--facts fully disclosed on a return, of such a large nature as would reasonably put such spouse on notice that further inquiry would need to be made. * * *

Petitioner argues that she was unsophisticated as to financial matters and that she signed each subject return on the basis of her trust in Albin and his accountant to prepare the returns correctly. Petitioner argues that she did not have any duty of inquiry in that she did not know what to inquire about.

Petitioner points the Court to Guth v. Commissioner, supra, Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989); Laird v. Commissioner, T.C. Memo. 1994-564, and Estate of Killian v. Commissioner, T.C. Memo. 1987-365, and argues that those cases support her request for relief.  We disagree.

First, although a requesting spouse's lack of involvement in family finances is one fact that may support a claim of relief from joint and several liability under section 6015, that fact standing alone may not always be enough for the spouse to receive that relief.  See Price v. Commissioner, supra at 443-444; Stevens v. Commissioner, 872 F.2d 1499, 1507 (11th Cir. 1989), affg. T.C. Memo. 1988-63; see also Hayman v. Commissioner, supra at 1262 (requesting spouse was not relieved of her duty of inquiry merely because she relied upon her husband to take care of their tax returns); Jonson v. Commissioner, 118 T.C. 106, 119-120 (2002) (section 6015 relief unavailable where requesting spouse did not establish that her husband concealed or attempted to deceive her concerning couple's financial affairs, and requesting spouse had access to financial files), affd. 353 F.3d 1181 (10th Cir. 2003); Levin v. Commissioner, supra (taxpayer who signed a blank joint return and then failed to inquire into her tax liability as to that return turned a "blind eye" to that liability and, thus, did not qualify for relief from joint and several liability).

Second, the fact that petitioner may have been unsophisticated about business matters in general, or tax shelters in particular, does not on the record before us relieve her of a duty of inquiry as to her tax liabilities. Hayman v. Commissioner, supra at 1262; Levin v. Commissioner, supra. Petitioner would clearly have seen, had she read the face of each subject return, that the Albins were reporting large amounts of income along with a large loss. She also would have clearly seen, had she read the back of each page, that the Albins were claiming that they owed little or no tax and were entitled to significant refunds. Petitioner could have easily questioned Albin as to the minimal or no tax in light of the large amounts of income. Petitioner, however, opted not to read any part of the returns or question Albin as to the returns. Instead, like the taxpayer in Levin, petitioner turned a "blind eye" to her Federal income tax liabilities for the subject years.[10]

Third, the referenced cases upon which petitioner relies are all factually distinguishable from the case at hand. Each of those cases, unlike this one, generally involved a controlling husband who misled, deceived, or hid things from his wife as to their financial affairs. In Guth v. Commissioner, 797 F.2d at

---

[10] Petitioner asserts in her brief that the use of the phrase "turning a blind eye" either denotes or connotes fraudulent behavior on her part. We disagree. We use that phrase to mean that petitioner preferred not to concern herself at all as to her Federal income tax liabilities.

442, the requesting spouse was told by her husband to sign their joint tax returns, and he controlled the couple's finances and was evasive and deceitful with respect to those finances. In Price v. Commissioner, supra, the requesting spouse reviewed her joint return, spotted the disputed deductions, and questioned her husband about them. The husband misled the requesting spouse on the validity of the deductions. In Laird v. Commissioner, supra, the requesting spouse asked her husband about his tax shelter programs but was ordered by him without any explanation to sign their joint returns. The husband also coerced and intimidated the requesting spouse both physically and mentally. In Estate of Killian v. Commissioner, supra, the requesting spouse reviewed her joint return, spotted an $11,756 claimed refund, and questioned her husband about it. The husband misled the requesting spouse as to the source of the refund.

We conclude that petitioner had "reason to know" of each understatement at hand within the meaning of section 6015(b)(1)(C) when she signed those returns. Accordingly, we hold that petitioner is not entitled to full/apportioned relief for any of the subject years.

2. Proportionate Relief

Section 6015(c) allows a qualifying individual who has filed a joint return to receive proportionate relief from the joint liability that would otherwise relate to that return. In order

- 15 -

to qualify for proportionate relief, an individual requesting such relief must at the time of the request be divorced or legally separated from the other individual who had joined in the joint return (nonrequesting spouse) or, alternatively, must not have been a member of the same household as the nonrequesting spouse during any part of the 12-month period ending on the date of the request.  See sec. 6015(c)(1)(3)(A)(i).

Petitioner argues in her brief that she is entitled to proportionate relief for all of the subject years.  The parties have stipulated, however, that petitioner is not entitled to proportionate relief for any of the subject years.  Given the additional fact that petitioner and Albin were married, not separated, and members of the same household during all relevant times, we hold that petitioner is not entitled to proportionate relief for any of the subject years.

3.  <u>Equitable Relief</u>

Section 6015(f) provides:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

This section grants the Commissioner discretion to grant equitable relief to any individual who files a joint return and who is not entitled to either full/apportioned relief or proportionate relief.  Because we have held that petitioner is not entitled to either full/apportioned relief or proportionate relief for any of the subject years, we consider whether petitioner is entitled to equitable relief for one or all of those years.

Our determination of whether petitioner is in fact entitled to equitable relief, in whole or in part, is made on the basis of a trial de novo and is not limited to matter contained in respondent's administrative record.  See Ewing v. Commissioner, 122 T.C. 32, 44, (2004).  Whereas respondent denied petitioner's claim to equitable relief, petitioner bears the burden of proving that this action was an abuse of respondent's discretion.  See Washington v. Commissioner, 120 T.C. 137, 146 (2003); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  In order to prevail, petitioner must demonstrate that respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law when he denied her the requested equitable relief.  See Jonson v. Commissioner, 118 T.C. at 125.

As directed by section 6015(f), the Commissioner has prescribed guidelines under which a taxpayer may qualify for

equitable relief. See Rev. Proc. 2000-15, 2000—1 C.B. 447.[11] Petitioner takes no exception to respondent's use of these guidelines to decide whether she qualifies for equitable relief. Under these guidelines, a taxpayer such as petitioner must meet seven threshold conditions before the Commissioner will consider her request for equitable relief. See Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Respondent concedes that petitioner has met these conditions.

Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, lists the circumstances in which the Commissioner will ordinarily grant equitable relief as to unpaid liabilities reported on a joint return. Those circumstances are:

> (a) At the time relief is requested, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date relief was requested;

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. * * *; and

---

[11] Rev. Proc. 2000-15, 2000-1 C.B. 447, has been superseded by Rev. Proc. 2003-61, 2003-32 I.R.B. 296, effective for requests for relief filed on or after Nov. 1, 2003, and for requests for such relief which were pending on, and for which no preliminary determination letter had been issued as of, that date. Given that Appeals in this case issued the notice of determination to petitioner on Aug. 21, 2002, we conclude that this case is controlled by Rev. Proc. 2000-15, supra.

> (c)  The requesting spouse will suffer economic hardship if relief is not granted. For purposes of this section, the determination of whether a requesting spouse will suffer economic hardship will be made by the Commissioner or the Commissioner's delegate, and will be based on rules similar to those provided in § 301.6343-1(b)(4) of the Regulations on Procedure and Administration.  [Id.]

Because this case concerns liabilities for deficiencies, and not unpaid liabilities reported on a joint return, Rev. Proc. 2000-15, sec. 4.02, does not apply.  See Mellen v. Commissioner, T.C. Memo. 2002-280.[12]

Where, as here, the requesting spouse does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02, the Commissioner may still grant that spouse relief under Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.  Rev. Proc. 2000-15, sec. 4.03, lists factors which the Commissioner will consider in deciding whether to grant equitable relief.  Rev. Proc. 2000-15, sec. 4.03(3)(1), lists the following six positive factors which weigh in favor of granting equitable relief:

> (a)  Marital status.  The requesting spouse is separated * * * or divorced from the nonrequesting spouse.

> (b)  Economic hardship.  The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

---

[12] Petitioner also fails the requirement of this section that she and Albin be either (1) divorced or legally separated at the time of the requested relief or (2) members of different households at any times during the 12-month period before that request.

(c) Abuse. The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

(d) No knowledge or reason to know. In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid. In the case of a liability that arose from a deficiency, the requesting spouse did not know and had no reason to know of the items giving rise to the deficiency.

(e) Nonrequesting spouse's legal obligation. The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability. This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

(f) Attributable to nonrequesting spouse. The liability for which relief is sought is solely attributable to the nonrequesting spouse.

Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, lists the following six negative factors which weigh against granting equitable relief:

(a) Attributable to the requesting spouse. The unpaid liability or item giving rise to the deficiency is attributable to the requesting spouse.

(b) Knowledge, or reason to know. A requesting spouse knew or had reason to know of the item giving rise to a deficiency or that the reported liability would be unpaid at the time the return was signed. This is an extremely strong factor weighing against relief. Nonetheless, when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under § 6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid, and in very limited situations where the requesting spouse

knew or had reason to know of an item giving rise to a deficiency.

(c) Significant benefit. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability or items giving rise to the deficiency. See § 1.6013-5(b).

(d) Lack of economic hardship. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) Noncompliance with federal income tax laws. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) Requesting spouse's legal obligation. The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

These positive and negative factors are not exhaustive, and none of them is decisive in and of itself. All factors must be considered and weighed appropriately. Id.

We proceed to consider the 12 listed factors seriatim and then to consider whether any unlisted factor is also applicable to this case. Neither party disputes that the knowledge or reason to know factor, the economic hardship factor, and the legal obligation factor in Rev. Proc. 2000-15, sec. 4.03(2)(b), (d), and (f), respectively, are the opposites of the knowledge or reason to know factor, the economic hardship factor, and the legal obligation factor in Rev. Proc. 2000-15, sec. 4.03(1)(d), (b), and (e), respectively. Nor does either party dispute that the attribution factor in Rev. Proc. 2000-15, sec. 4.03(2)(a), is

essentially the opposite of the attribution factor in Rev. Proc. 2000-15, sec. 4.03(1)(f),

a. Positive Factors

i. Marital Status

Petitioner does not claim that this factor favors her position. Nor do we find that such is the case. Petitioner is neither separated nor divorced from Albin. We hold that this factor does not weigh in favor of granting equitable relief to petitioner for any of the subject years. Because Rev. Proc. 2000-15, supra, states that this factor will only serve to weigh in favor of granting relief when it is met, and fails to state that this factor will weigh against granting relief when it is not met, we consider this factor neutral.

ii. Economic Hardship

Petitioner argues that she will suffer economic hardship if equitable relief is not granted to her for each of the subject years. Petitioner argues that a decision adverse to her in this case will force her to sell all of her assets so that she may pay the liabilities in issue and may even result in her incurring a new liability for taxes due on any capital gain that she realizes on the sale.

In determining whether a requesting spouse will suffer economic hardship, Rev. Proc. 2000-15, sec. 4.02(1)(c), to which Rev. Proc. 2000-15, sec. 4.03(1)(b), refers, requires reliance on

rules similar to those contained in section 301.6343-1(b)(4),

Proced. & Admin. Regs.  Section 301.6343-1(b)(4)(i), Proced. &

Admin. Regs., generally states that an individual suffers an

economic hardship if the individual is unable to pay his or her

reasonable basic living expenses.  Section 301.6343-1(b)(4),

Proced. & Admin. Regs., states in pertinent part:

> (ii) Information from taxpayer.  In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including–
>
> > (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;
> >
> > (B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);
> >
> > (C) The cost of living in the geographic area in which the taxpayer resides;
> >
> > (D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;
> >
> > (E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer
claims bears on economic hardship and brings
to the attention of the director.

Petitioner has presented little or no evidence of her current financial situation, such as her current salary, her basic living expenses, or the amounts of her other debts. Nor has petitioner presented any evidence as to the nature and amount of her basic living expenses which she will be unable to pay if she is not granted her requested relief. On the record before us, we conclude that petitioner has failed to carry her burden of establishing within the context of section 301.6343-1(b)(4), Proced. & Admin. Regs., (1) her basic living expenses, and (2) that any expenses which she considers to be basic living expenses are "reasonable". We also conclude that petitioner has failed to carry her burden of establishing that she would suffer an economic hardship if the Court were to deny her equitable relief and that she has failed to carry her burden of establishing that the economic hardship factor in Rev. Proc. 2000-15, sec. 4.03(1)(b), is present in this case. We conclude that this factor does not weigh in favor of granting equitable relief to petitioner for any of the subject years. Because Rev. Proc. 2000-15, supra, states that this factor will only serve to weigh in favor of granting relief when it is met, and fails to state that this factor will weigh against granting relief when it is not met, we consider this factor neutral.

### iii. <u>Abuse</u>

Petitioner does not claim that this factor favors her position. Nor do we find that such is the case. The record does not establish that petitioner was abused by Albin in any regard. We hold that this factor does not weigh in favor of granting equitable relief to petitioner for any of the subject years. Because Rev. Proc. 2000-15, <u>supra</u>, states that this factor will only serve to weigh in favor of granting relief when it is met, and fails to state that this factor will weigh against granting relief when it is not met, we consider this factor neutral.

### iv. <u>No Knowledge or Reason To Know</u>

Petitioner's liabilities in issue arose from deficiencies. Petitioner argues that she did not know and had no reason to know of the items giving rise to those deficiencies. As mentioned above, respondent makes no claim that petitioner actually knew about the understatement or the shelter and deductions related thereto.

The parties do not dispute that the facts and circumstances that the Court must consider in determining whether petitioner has established that this factor is present are the same facts and circumstances that the Court must consider in determining that petitioner did not satisfy section 6015(b)(1)(C). Indeed, in holding that a requesting spouse did not qualify for equitable relief, the Court has previously relied on, inter alia, its

findings that the requesting spouse did not satisfy section 6015(b)(1)(C).  See, e.g., Butler v. Commissioner, 114 T.C. at 284-286, 292.

For the reasons discussed above in our analysis of section 6015(b)(1)(C), we conclude that petitioner had "reason to know" of each of the understatements and shelter deductions at hand within the meaning of this factor when she signed the subject returns.  We hold that this factor does not weigh in favor of granting equitable relief to petitioner for any of the subject years.  Because Rev. Proc. 2000-15, supra, states that this factor will only serve to weigh in favor of granting relief when it is met, and fails to state that this factor will weigh against granting relief when it is not met, we consider this factor neutral

### v.   Nonrequesting Spouse's Legal Obligation

Petitioner does not claim that this factor favors her position.  Nor do we find that such is the case.  The record does not establish that Albin had a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liabilities.  Given the additional fact that the Albins were married to each other at all relevant times, we hold that this factor does not weigh in favor of granting equitable relief to petitioner for any of the subject years.  Because Rev. Proc. 2000-15, supra, states that this factor will only serve to weigh in favor of granting

relief when it is met, and fails to state that this factor will weigh against granting relief when it is not met, we consider this factor neutral.

vi. Attributable to Nonrequesting Spouse

The liabilities for which relief is sought are attributable solely to the nonrequesting spouse, Albin, and respondent concedes as much. We hold that this factor weighs in favor of granting equitable relief to petitioner for each of the subject years.

b. Negative Factors

i. Attributable to the Requesting Spouse

As stated above, none of the understatements is attributable to petitioner. We hold that this factor does not weigh against granting equitable relief to petitioner for any of the subject years. Because Rev. Proc. 2000-15, supra, states that this factor will only serve to weigh against granting relief when it is met, and fails to state that this factor will weigh in favor of granting relief when it is not met, we consider this factor neutral.

ii. Knowledge or Reason To Know

For the reasons stated above in our analysis of the positive counterpart to this factor, we conclude that petitioner had reason to know about the understatements and shelter deductions in issue at all relevant times. We hold that this factor weighs

against granting equitable relief to petitioner for all of the subject years.  As stated in Rev. Proc. 2000-15, sec. 4.03(2)(b), the presence of this factor is an "extremely strong factor weighing against relief", and a taxpayer such as petitioner may offset this factor and qualify for equitable relief only in "very limited situations" where "the factors in favor of equitable relief are unusually strong".

### iii.  Significant Benefit

Petitioner argues that she did not significantly benefit beyond normal support from the shelter losses giving rise to the deficiencies.  According to petitioner, the only substantial asset that the Albins purchased during the subject years was the home that they purchased in Dana Point.  We reject petitioner's argument.[13]

The claimed shelter losses giving rise to the deficiencies provided both of the Albins with significantly more disposable income than they otherwise would have had.  In order to determine whether petitioner significantly benefited from those claimed shelter losses, we consider whether the Albins were able to make expenditures in each of the subject years that they otherwise

---

[13] We note at the start that petitioner fails to mention that in addition to the Albins' home in Dana Point, they also purchased during the subject years one of their three rental properties and did so with a $20,000 cash downpayment.  We also note that the Albins purchased their second home in 1987 with a cash downpayment of $200,000.

would not have been able to make. See <u>Alt v. Commissioner</u>, 119 T.C. at 314; <u>Jonson v. Commissioner</u>, 118 T.C. at 119-120. Normal support, which is measured by the circumstances of the requesting spouse, is not a significant benefit. <u>Flynn v. Commissioner</u>, 93 T.C. 355, 367 (1989).

On the record before us, we find that petitioner has failed to establish the amount that the Albins expended annually for their normal support before, during, and after the subject years. On that record, we further find that petitioner has failed to carry her burden of persuading us that she did not significantly benefit beyond normal support from the shelter loss giving rise to the deficiency for each subject year. On the record before us, we find that petitioner has failed to carry her burden of establishing that this factor is not present in this case. We hold that this factor is neutral for each of the subject years.

### iv. <u>Lack of Economic Hardship</u>

For the reasons stated above in our analysis of the positive counterpart to this factor, we conclude that petitioner will not suffer economic hardship from a denial of equitable relief in each of the subject years. We hold that this factor weighs against granting equitable relief to petitioner for all of the subject years.

### v.  Noncompliance With Federal Income Tax Laws

Cipriotti concluded that petitioner was in compliance with tax laws for all of the taxable years after the subject years. Because Rev. Proc. 2000-15, supra, states that this factor will only serve to weigh against granting relief when it is met, and fails to state that this factor will weigh in favor of granting relief when it is not met, we consider this factor neutral.

### vi.  Requesting Spouse's Legal Obligation

With respect to the positive counterpart of this factor, we held that that factor does not weigh in favor of granting equitable relief to petitioner for any of the subject years and that it is neutral.  On the record before us, we also find that this factor is neutral in that petitioner does not have a legal obligation pursuant to a divorce decree or agreement to pay the liabilities in issue and has been married to Albin at all relevant times.

### c.  Other Relevant Factors

On the record before us, we find that petitioner has failed to carry her burden of establishing with respect to the subject years any other factor that is not set forth in Rev. Proc. 2000-15, supra, and that would weigh in favor of granting her equitable relief.

## 4. Conclusion

Upon examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that respondent abused his discretion in denying her equitable relief for all of the subject years. The only positive factor that supports granting petitioner equitable relief is that the liabilities in issue are attributable solely to Albin. Two negative factors, i.e., reason to know and lack of economic hardship, weigh against granting her equitable relief. As noted above, the reason-to-know factor is "an extremely strong factor weighing against relief" which generally may be outweighed only "when the factors in favor of equitable relief are unusually strong". Rev. Proc. 2000-15, sec. 4.03(2)(b). The fact that the subject liabilities are attributable solely to Albin is not such an "unusually strong" factor. Id. Such is especially so given that we do not find that petitioner will suffer an economic hardship in paying those liabilities. We conclude and hold that respondent did not abuse his discretion when he denied equitable relief to petitioner as to the liabilities in issue.

All of petitioner's arguments have been considered, and we have rejected those arguments not discussed herein as without merit.

Decision will be entered for respondent.