T.C. Summary Opinion 2008-119

UNITED STATES TAX COURT

JANE FRANCES SCHWIND, f.k.a. JANE FRANCES SKOLNICK, Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12663-06S.                    Filed September 9, 2008.

Jane Frances Schwind, pro se.

Michael T. Sargent, for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from a request for relief from joint and several liability under section 6015(f) with respect to petitioner's unpaid joint tax liability for 2003. No notice of deficiency was issued. The issues for decision are whether petitioner is entitled to relief from joint and several liability under section 6015(f) and whether she is entitled to a refund of amounts paid towards the liability under section 6015(g)(1).[1]

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When the petition was filed, petitioner resided in Maryland.

In September 2001 petitioner married David Skolnick (Mr. Skolnick). Petitioner worked and continues to work as a registered nurse. Mr. Skolnick was employed as an engineer by Zeta Associates, Inc. (Zeta), until June 2003 when his employer terminated his employment, but he found new employment by the end of 2003.

---

[1]Although petitioner requested relief under sec. 6015(b), (c), or (f), her liability results from an underpayment of tax on account of overstated withholdings, not an understatement of tax (as defined by sec. 6662(d)(2)(A)) or a deficiency (defined by sec. 6211). See sec. 6015(b)(3), (c)(1). Thus, petitioner is not entitled to relief under sec. 6015(b) or (c), and the Court's review is limited to sec. 6015(f).

On December 13, 2003, Mr. Skolnick sold his stock holdings in Zeta for $99,899.91; no Federal income tax was withheld. Around March 2004 Mr. Skolnick deposited the check for the stock proceeds into his and petitioner's joint checking account. Although the joint account was used to deposit their paychecks and to pay household bills, petitioner was not allowed to open or to review the account statements.

Around April 2004 Mr. Skolnick prepared and electronically filed a joint Form 1040, U.S. Individual Income Tax Return, for 2003. Petitioner's participation in the preparation of the Form 1040 was limited to providing Mr. Skolnick with her "W-2s". But petitioner was allowed to review the Form 1040 after Mr. Skolnick had filed it. Among other things, Mr. Skolnick reported the following:

| Description | Amount |
| --- | --- |
| Taxable income (line 40) | $205,171 |
| Total tax (line 60) | 41,482 |
| Withholdings (line 61) | 66,332 |
| Excess Social Security | 1,831 |
| Overpayment | 26,681 |

Third-party-payor records, however, showed withholdings totaling $36,331 ($3,795 was withheld on petitioner's wages and $32,536 was withheld on Mr. Skolnick's wages). Respondent determined that the Skolnicks had overstated their withholdings by $30,001, and he reduced their "Payments" by that amount. In

May 2005 respondent issued a Notice CP2000, reflecting a "Proposed Balance Due" of $31,656.

In the interim Mr. Skolnick had left the marital home in January 2005. Petitioner left the marital home in March 2005. Mr. Skolnick and petitioner instituted divorce proceedings in 2005; the divorce was finalized in February 2006. In January 2006 petitioner and Mr. Skolnick entered into a "Property And Support Settlement Agreement" (property settlement). In pertinent part, the property settlement provides:

> [t]he parties agree that they have potential joint tax liability for 2003 for at least [$31,656 * * * Mr. Skolnick paid $31,656 to the Internal Revenue Service (IRS), and petitioner paid half of the amount to him as her share of the liability. If there are additional tax liabilities for 2003, Mr. Skolnick agrees to pay them. If the IRS determines that any part of the 2003 tax liability is not due and refunds it, the parties agree to split it. If penalties or interest for 2003 are refunded, the parties agree that Mr. Skolnick is entitled to it].

While the divorce was pending, petitioner submitted a Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), to the IRS in June 2005.[2] In August 2005 she submitted a Form 12510, Questionnaire for Requesting Spouse. The IRS issued a preliminary determination in

---

[2]Mr. Skolnick was notified that petitioner was seeking relief from joint and several liability and that he had a right to intervene in the matter. He did not respond to letters from the IRS or exercise his right to intervene in petitioner's Tax Court case.

November 2005. It denied relief under section 6015(b), (c), and (f), reasoning:

> Information contained in your case indicates that you had knowledge and/or reason to know of the item that gave rise to the tax deficiency. There was too much withholding claimed on the return and you did not review the return. You failed your duty of inquiry at the time of filing.

Petitioner appealed to the Appeals Office (Appeals) in December 2005. Appeals issued a notice of determination on March 30, 2006. It states that relief was denied because the item "leading to the understatement was not attributable" to Mr. Skolnick.

In the interim Mr. Skolnick had made a $31,656 payment on behalf of himself and petitioner in January 2006. On February 6, 2006, the IRS determined that petitioner and Mr. Skolnick were liable for a $3,000 addition to tax under section 6651(a)(2), plus interest. According to the notice of determination, the unpaid balance of income tax due from petitioner was $4,367.17 as of March 30, 2006. The amount of relief of 2003 income tax petitioner sought was $30,001.

## Discussion

### I. Burden of Proof

Except as otherwise provided in section 6015, petitioner bears the burden of proof with respect to her entitlement to relief from joint and several liability. See Rule 142(a); Alt v.

<u>Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

## II.  <u>Joint and Several Liability and Section 6015(f) Relief</u>

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several.  See also sec. 1.6013-4(b), Income Tax Regs.  But the IRS may relieve a taxpayer from joint and several liability under section 6015 in certain circumstances.  An individual may be relieved from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency and he does not qualify for relief under section 6015(b) or (c).

To guide IRS employees in exercising their discretion, the Commissioner has issued revenue procedures that list the factors they should consider.  The Court also uses the factors when reviewing the IRS's denial of relief.  See <u>Washington v. Commissioner</u>, 120 T.C. 137, 147-152 (2003); Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.

## III.  <u>Rev. Proc. 2003-61, Sec. 4.01:  Seven Threshold Conditions for Relief</u>

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, begins with a list of seven threshold conditions that a taxpayer must satisfy in order to qualify for equitable relief.  The Court will

not recite them all since the only factor at issue is the so-called attribution factor.  Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. at 297, provides that the tax liability from which the requesting spouse seeks relief must be attributable to the nonrequesting spouse unless certain exceptions apply which are not relevant here.

Petitioner contends that the claimed $30,001 of excess withholdings is attributable to Mr. Skolnick because he overstated their withheld amounts when he prepared and electronically filed their Form 1040.

Respondent contends that petitioner's request for relief seems to be based on the assumption that the overstated withholding credits are directly related to Mr. Skolnick's stock sale.  According to respondent, Appeals determined that that was not the case:  the overstated withholdings could have been a math error, a "typo when the electronic return was computed using whatever computer software was used[,] * * * an inflated number pulled out of the air," or any one of a number of explanations.

The Appeals officer's "Case Activity Record" states that the understatement was "caused by reporting withholding in relation to a 1099B.  There was no withholding on the 1099B."  The record further states:  "She argues it was due to the 1099b. * * * [I told her] it had not been filed.  I stated that there is nothing on the 1099b so that is just a guess."  The record also states

that he explained that withholding is "normally considered a joint and several liability because it normally cannot be allocated." The officer's "workpapers" state that the item was not attributable to either spouse because they had claimed too much withholding. Further, her arguments that the item should be attributed to Mr. Skolnick because he claimed the withholding in relation to a Form 1099 were "without merit and it would be inequitable to attribute the disallowed withholding to the NRS based upon an assumption."

The Court is not persuaded by respondent's arguments. In deciding the issue of to whom inaccurate, false, or "phony" deductions or credits are attributable, the Court has attributed such deductions or credits to the spouse who wrongfully reported or claimed the item (with certain exceptions not applicable here). See Lawson v. Commissioner, T.C. Memo. 1994-286 (spouse who mischaracterized stock sale as an ordinary loss rather than a capital loss was attributed the item); Gill v. Commissioner, T.C. Memo. 1993-274 (phony Schedule A deductions were attributed to spouse who prepared the return and claimed the items); Perry v. Commissioner, T.C. Memo. 1992-258 (phony Schedule C deductions were attributed to spouse who claimed the items); Davis v. Commissioner, T.C. Memo. 1992-240 (phony Schedule A deduction was attributed to spouse who claimed it), affd. without published opinion 26 F.3d 130 (9th Cir. 1994); see also Belk v.

Commissioner, 93 T.C. 434, 437 (1989) (clerical mistake, i.e.,
claiming a $15,000 deduction rather than a $1,500 loss, was
attributed to spouse who claimed the deduction).[3]

On the basis of the foregoing, the Court finds that the
overstated withholding credits are attributable to Mr. Skolnick--
he prepared the return and wrongfully reported the overstated
amounts.[4]  Therefore, the Court also finds that petitioner has
satisfied the seventh threshold condition of Rev. Proc. 2003-61,
sec. 4.01.

IV.  Rev. Proc. 2003-61, Sec. 4.02:  Circumstances Ordinarily
     Allowing for Relief

Where the requesting spouse satisfies the threshold
conditions of Rev. Proc. 2003-61, sec. 4.01, then Rev. Proc.
2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth the

---

[3]Although these cases arose under former sec. 6013(e), the
Court has determined that cases interpreting similar terms under
sec. 6013(e) remain instructive in its analysis.  See Alt v.
Commissioner, 119 T.C. 306, 314 (2002), affd. 101 Fed. Appx. 34
(6th Cir. 2004); Juell v. Commissioner, T.C. Memo. 2007-219;
Becherer v. Commissioner, T.C. Memo. 2004-282.  The terms
"attributable to an item of the individual with whom the
requesting spouse filed the joint return ('the nonrequesting
spouse')" of Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. 296,
297, is similar to the terms "attributable to grossly erroneous
items of one spouse" of sec. 6013(e).  The analysis for
attributing items to one spouse or the other is essentially the
same.

[4]In addition, there is a strong implication that Mr.
Skolnick was the culpable person since he:  (1) Accepted
responsibility for any additional liabilities in their property
settlement; and (2) has not contested petitioner's assertions or
otherwise intervened in the matter, see supra note 2.

circumstances in which the IRS will ordinarily grant relief under section 6015(f) with respect to an underpayment of a properly reported liability.  To qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the requesting spouse must:  (1) No longer be married to, be legally separated from, or have not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when she signed the return that the nonrequesting spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.

Petitioner was not divorced or legally separated from Mr. Skolnick when she requested relief.  Additionally, petitioner and Mr. Skolnick resided together within the 6-month period preceding her request:  she testified that he moved out in January 2005, while her Form 8857 is dated June 11, 2005.  Thus, she fails requirement 1, and the Court need not discuss the others.  Accordingly, petitioner does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02.

V.  Rev. Proc. 2003-61, Sec. 4.03:  Other Factors

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.  The Court's analysis with respect to the nonexhaustive list

of factors contained in Rev. Proc. 2003-61, sec. 4.03 is described below.

A. <u>Marital Status</u>

The IRS will take into consideration whether the requesting spouse is divorced or separated (whether legally separated or living apart) from the nonrequesting spouse. Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.

Petitioner and Mr. Skolnick were separated, i.e., living apart, when she requested relief. This factor weighs in favor of relief. See <u>id.</u>; cf. <u>Nihiser v. Commissioner</u>, T.C. Memo. 2008-135 (living apart under Rev. Proc. 2000-15 weighs in favor of relief); <u>Beatty v. Commissioner</u>, T.C. Memo. 2007-167 (remaining married or residing together is a neutral factor under Rev. Proc. 2003-61); <u>Butner v. Commissioner</u>, T.C. Memo. 2007-136 (same under Rev. Proc. 2000-15).

B. <u>Economic Hardship</u>

The IRS will take into consideration whether the requesting spouse will suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298. Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses. <u>Butner v. Commissioner</u>, <u>supra</u>.

In determining a reasonable amount for basic living expenses, the Court considers, among other things: (1) The

taxpayer's age, employment status and history, ability to earn, and number of dependents; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, and expenses necessary to the taxpayer's production of income; (3) the cost of living in the taxpayer's geographic area; (4) the amount of property available to satisfy the taxpayer's expenses; (5) any extraordinary circumstances; i.e., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship.  See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

The IRS has issued guidelines for allowable expenses.[5] "Necessary expenses are those that meet the necessary expense test; i.e., 'they must provide for a taxpayer and his or her family's health and welfare and/or the production of income' and they must be reasonable."  Schulman v. Commissioner, T.C. Memo. 2002-129 n.6.  There are three types of necessary expenses: (1) Those based on national standards; i.e., food, housekeeping supplies, clothing, and personal care products and services; (2) those based on local standards; i.e., housing, utilities, and transportation; and (3) other expenses, which are not based on national or local standards.  Id.

---

[5]The guidelines are published on the IRS's Web site at http://www.irs.gov/individuals/article/0,,id=96543,00.html (last visited May 30, 2008).  The amount listed as the national or local standard is effective as of Oct. 1, 2007.

Petitioner testified that she estimated the expenses on her Form 12510 for herself and her two children. With the exception of the $1,435 for monthly rent, she has not substantiated her expenses; i.e., by providing receipts or statements. Therefore, the Court will use the national and local standards.

The monthly national standard allows a family of three:

| Expenditure | Amount |
|---|---|
| Food | $626 |
| Housekeeping supplies | 61 |
| Apparel & services | 209 |
| Personal care products & services | 58 |
| Miscellaneous | 197 |
| Out-of-pocket health care | 171 |
| Total | 1,322 |

Petitioner is allowed $217 as operating costs for her automobile (local standard). The Court has determined total expenditures of $2,974, while she claimed net wages of $3,088. Petitioner's net wages exceed her expenditures by $114. Although petitioner is supporting two children, she is gainfully employed as a nurse--earning approximately $60,000 a year. In addition, there is no information in the record as to the costs of her children's private school tuition or the value of any assets that could be used to satisfy the liability (she testified that she has since moved and is making payments on a home). The Court also notes that petitioner may seek to enforce the terms of the property settlement against Mr. Skolnick for the additional penalties and interest. Consequently, the Court finds that

petitioner has not shown that she will suffer economic hardship if she is not relieved of the liability. See Monsour v. Commissioner, T.C. Memo. 2004-190 (requesting spouse must prove that the expenses qualify and that they are reasonable). This factor weighs against granting relief. See Banderas v. Commissioner, T.C. Memo. 2007-129 (lack of economic hardship weighs against relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (same under Rev. Proc. 2000-15).

C. Knowledge or Reason To Know

The IRS will also consider whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298. As is relevant here, the IRS will consider any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's involvement in the household's finances, and any lavish or unusual expenditures compared with past spending levels in determining whether the requesting spouse had reason to know of the underpayment (the factors specified in Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989)). Id. sec. 4.03(2)(a)(iii)(C).

Typically, in the case of a reported but unpaid liability, the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid. See Washington v. Commissioner, 120 T.C. at 151; see also

Feldman v. Commissioner, T.C. Memo. 2003-201, affd. 152 Fed. Appx. 622 (9th Cir. 2005). The general rule for unpaid liabilities is that the requesting spouse must establish that: (1) When she signed the return, she had no knowledge or reason to know that the tax reported on the return would not be paid; and (2) it was reasonable for her to believe that the nonrequesting spouse would pay the tax shown due. See Morello v. Commissioner, T.C. Memo. 2004-181; Ogonoski v. Commissioner, T.C. Memo. 2004-52; Collier v. Commissioner, T.C. Memo. 2002-144.

Petitioner testified that: (1) Mr. Skolnick prepared and electronically filed the return; (2) she was not present when he filed it; (3) she was able to review the return but only after he filed it; and (4) she does not recall signing a signature page.[6]

The Appeals officer's "Case Activity Record" states: "Knowledge--The NRS e-filed the return. The RS did not review." His workpapers merely state that she did not review the return

---

[6]Whether petitioner failed to sign the 2003 Form 1040 necessarily implicates issues regarding whether she filed a joint return and whether she is entitled to relief under sec. 6015(f). See sec. 1.6015-4(a), Income Tax Regs. (the filing of a joint return is a prerequisite to sec. 6015 relief). The Court finds that petitioner intended to and did file a joint return with Mr. Skolnick because she has not otherwise renounced the 2003 Form 1040 and she provided her "W-2s" to Mr. Skolnick. See Heim v. Commissioner, 27 T.C. 270, 273 (1956), affd. 251 F.2d 44 (8th Cir. 1958); Gudenschwager v. Commissioner, T.C. Memo. 1989-6; sec. 1.6013-1(a)(2), Income Tax Regs.; see also Ziegler v. Commissioner, T.C. Memo. 2003-282 (the Court assumed that the taxpayer conceded the filing of a joint return or ratified the joint return that the nonrequesting spouse filed because she continued to assert her entitlement to sec. 6015(f) relief).

for accuracy, "she would also be charged with constructive knowledge of the item", and since the "withholding was reported on the return, she has actual knowledge of the item."

Petitioner and Mr. Skolnick's Form 1040 showed an overpayment for 2003 on account of overstated withholdings--not taxes due. Petitioner was not alerted to the fact that there was a $31,165 "Proposed Balance Due" until she received the Notice CP2000 in May 2005. Moreover, with respect to the Price factors, petitioner's involvement in their finances was insufficient to put her in a position to have reason to know that the Form 1040 contained overstated withholdings when she signed it. There is no evidence that their expenditures were unusual or extravagant or that their overall standard of living significantly improved during 2003 to put petitioner on notice that Mr. Skolnick overstated their withholdings.

Arguably, weighing against petitioner is the officer's conclusion that "the 2003 refund was way out of line with prior years. This should have triggered something." Although the 2002 and 2003 returns are not in evidence, respondent represented that $10,743.61 of the claimed $26,681 overpayment for 2003 was applied to their joint liability for 2002.[7]

_____

[7]At trial respondent asserted that he did not include a copy of the 2003 return because it was not part of the administrative record, although he could have obtained one.

Without the 2002 and 2003 returns, the Court is hesitant to agree with the officer's conclusion that the claimed $26,681 refund for 2003 "should have triggered something."  There is nothing in the record establishing what that $10,743.61 liability for 2002 consists of (i.e., a deficiency, interest, or penalties).  In addition, 2002 was the first year that the Skolnicks had filed a joint return; thus, there was no real filing history by which petitioner could have tested the 2003 refund for accuracy.  The January 2006 property settlement indicates they were going to claim a $2,047.03 overpayment for 2002 by January 31, 2006, which corroborates petitioner's testimony that she did not learn about the issues with the 2002 return until after the issues with the 2003 return had come to light.  On the basis of the evidence in the record, it does not appear that "the 2003 refund was way out of line with prior years" such that petitioner should have had reason to know that Mr. Skolnick had overstated their withholdings for 2003.

On the basis of the foregoing, the Court finds that this factor is neutral.  See, e.g., Alpha Med., Inc. v. Commissioner, 172 F.3d 942 (6th Cir. 1999) (a factor favoring neither party is neutral), revg. T.C. Memo. 1997-464.

D.  Nonrequesting Spouse's Legal Obligation

The IRS will also consider whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax

liability pursuant to a divorce decree or agreement.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298.  But if the requesting spouse knew or had reason to know when the agreement was entered into that the nonrequesting spouse would not pay the liability, then this factor will not weigh in favor of relief.  Id.

The property settlement provides that Mr. Skolnick agreed to pay any additional liabilities for 2003.  There is nothing in the record indicating that petitioner knew or should have known when she entered into the agreement that Mr. Skolnick would not pay the liability--he paid his half of the $31,656 liability when they entered into the agreement in January 2006, and respondent did not determine the addition to tax until February 2006.  This factor weighs in favor of relief.  See id.; see also Magee v. Commissioner, T.C. Memo. 2005-263 (applying Rev. Proc. 2003-61); cf. Billings v. Commissioner, T.C. Memo. 2007-234 (applying Rev. Proc. 2000-15).

E.  Significant Benefit

The IRS will consider whether the requesting spouse received significant benefit beyond normal support as a result of the unpaid tax liability.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.

On petitioner's Form 12510, she claimed that she believed that the refund was used to pay the Skolnicks' household

expenses.  There is no evidence indicating that she received significant benefit as a result of the unpaid tax liability. Therefore, the Court concludes that this factor weighs in favor of relief.  See Magee v. Commissioner, T.C. Memo. 2007-136 (lack of significant benefit weighs in favor of relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (lack of significant benefit weighed in favor of relief under former section 6013(e) notwithstanding that Rev. Proc. 2000-15 stated that it was neutral).

F.  Compliance With Federal Tax Laws

The IRS will take into consideration whether the requesting spouse has made a good faith effort to comply with the Federal tax laws in the succeeding years.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.

This factor is neutral because no evidence or argument was presented as to the issue.  See Knorr v. Commissioner, T.C. Memo. 2004-212.

G.  Abuse

The IRS will also consider whether the nonrequesting spouse abused the requesting spouse.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299.  The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the requesting spouse's knowledge or reason to know.  Id.

Petitioner testified that Mr. Skolnick was "not necessarily physically abusive."  Therefore, this factor is neutral.  <u>Id.</u> (the presence of abuse weighs in favor of relief while lack of abuse does not weigh against relief); see also <u>Magee v. Commissioner</u>, <u>supra</u> (lack of abuse is a neutral factor under Rev. Proc. 2003-61); cf. <u>Butner v. Commissioner</u>, <u>supra</u> (same under Rev. Proc. 2000-15).

H.   <u>Mental or Physical Health</u>

The IRS will take into consideration whether the requesting spouse was in poor mental or physical health on the date she signed the return or at the time relief was requested.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

There is no evidence in the record that petitioner's mental or physical health was poor; therefore, this factor is neutral. See <u>id.</u>; see also <u>Magee v. Commissioner</u>, <u>supra</u>.

I.   <u>Conclusion:  Weight of the Factors</u>

Petitioner has presented a strong case for relief from joint and several liability.  Three factors weigh in favor of relief, one, economic hardship, weighs against relief, and four factors are neutral.  While the economic hardship factor weighs against her, it does not outweigh the other factors.  Accordingly, petitioner is entitled to relief under section 6015(f).

VI.  <u>Petitioner's Refund Claim</u>

Petitioner has requested a refund of amounts paid towards the 2003 tax liability.

In pertinent part, section 6015(g)(1) provides that a refund shall be allowed to the extent it is attributable to the operation of section 6015 except to the extent that it may be affected by other specified sections.

Rev. Proc. 2003-61, sec. 4.04(2), 2003-2 C.B. at 299, provides that in a case involving an underpayment of income tax, a requesting spouse is eligible for a refund of separate payments made after July 22, 1998, if she establishes that she provided the funds used to make the payment for which she seeks a refund. But a requesting spouse is not eligible for refunds of payments made with the joint return, joint payments, or payments that the nonrequesting spouse made. Id.

Respondent has represented that petitioner and Mr. Skolnick's 2003 return was timely filed; the filing date is deemed to be April 15, 2004. See sec. 6513(a). On April 15, 2004, petitioner paid $3,795 in the form of withholdings. See sec. 6513(b)(1) (certain withheld amounts are paid on the 15th day of the 4th month following the close of the taxable year). Her withholdings constitute a payment made with the joint return; consequently, she is not eligible for a refund with respect to that payment. See Rev. Proc. 2003-61, sec. 4.04(2); cf. Rosenthal v. Commissioner, T.C. Memo. 2004-89. In January 2006 Mr. Skolnick submitted a $31,656 payment, of which petitioner paid half.[8] The January 2006 payment encompasses a $31,656 joint

---

[8]Petitioner's Form 8857, received by the IRS on June 20,
(continued...)

payment and in part a payment made by a nonrequesting spouse. Consequently, petitioner is not eligible for a refund with respect to the January 2006 payment. See Rev. Proc. 2003-61, sec. 4.04(2); cf. Rosenthal v. Commissioner, supra.

In conclusion, the Court holds that petitioner is entitled to relief from joint and several liability under section 6015(f) with respect to the unpaid addition to tax under section 6651(a)(2) and interest for 2003. But petitioner is not entitled to any refund for 2003.

To reflect the foregoing,

An appropriate decision will be entered.

---

[8](...continued) 2005, is a claim for a refund. See Washington v. Commissioner, 120 T.C. 137, 161-162 (2003). Her petition, filed on July 3, 2006, also includes a refund claim. Petitioner's refund claims are timely with respect to both payments. See sec. 6511(a) (a claim for credit or refund of an overpayment of any tax shall be filed by the taxpayer within: (1) 3 years from the time the return was filed, or (2) 2 years from the time the tax was paid, whichever period expires later).